GRACE L. OLSEN, APPELLANT AND CROSS-APPELLEE, V.
CHERIE OLSEN, PERSONAL REPRESENTATIVE OF THE
ESTATE OF HAROLD C. OLSEN, DECEASED,
APPELLEE AND CROSS-APPELLANT.

657 N.W.2d 1

Filed February 14, 2003.   No. S-01-1271.

Paul E. Hofmeister, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, P.C., L.L.O., for appellant.

James M. Mathis, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Grace L. Olsen appeals the order of the district court for Banner County granting some but not all of the relief she sought

in an action she filed against Harold C. Olsen, her subsequently deceased former husband. In the instant case, the district court quieted title to certain mineral interests which Harold was required to transfer to Grace pursuant to their divorce decree; but because the court found Grace guilty of laches, it quieted title as of February 6, 1990, the date she filed the petition in this case, rather than as of a date in 1979, when the mineral interests were purportedly transferred. Under the court's ruling, Grace did not share in proceeds attributable to the mineral interests which accrued prior to February 6, 1990.

Grace argues on appeal that the district court erred in finding her guilty of laches and therefore failing to quiet title as of 1979. Cherie Olsen, the personal representative of Harold's estate, cross-appeals on his estate's behalf and argues that Grace's action to quiet title was barred by the statute of limitations or, in the alternative, that the court's finding of laches should have completely barred relief.

We conclude that Harold, by and through Cherie, was equitably estopped from asserting the statute of limitations and, due to his unclean hands, was prevented from asserting laches. In view of our conclusions, the court correctly quieted title in Grace. However, the court erred in quieting title as of February 6, 1990, rather than August 15, 1979. We further conclude that the court erred in finding Grace guilty of laches. We therefore affirm the district court's decision in part, reverse it in part, and remand the cause for further proceedings.

## STATEMENT OF FACTS

Grace and Harold were divorced pursuant to a decree of dissolution filed February 13, 1979, in the district court for Kimball County. At the time of the dissolution, Grace and Harold reached a property settlement agreement which was approved by the district court. In the decree of dissolution, the court ordered that the property of the parties be distributed in accordance with the agreement. The agreement provided, inter alia, that each of the parties "shall have an undivided 1/2 interest in all of the oil, gas and other minerals which are now presently owned by the parties." The agreement did not specify legal descriptions for the mineral interests owned by the parties.

Although the decree directed the parties to execute the necessary documents, it did not provide that a transfer would be deemed to have occurred in the absence of such execution.

On August 15, 1979, Grace and Harold signed a mineral deed prepared by Grace's attorney. The mineral deed was designed to carry out the property settlement agreement by purportedly transferring equal undivided mineral interests to Grace and Harold. Grace testified that the mineral deed was prepared using legal descriptions provided by Harold's sister.

Sometime in 1984, Grace learned that the 1979 mineral deed contained inaccurate legal descriptions of certain mineral interests and omitted other mineral interests owned by Harold at the time of the dissolution. Grace researched real estate records to obtain correct and complete legal descriptions. In 1985, Grace's attorney prepared a correction mineral deed to reform and supplement the 1979 mineral deed and sent the correction mineral deed to Harold with a letter requesting that he execute the correction mineral deed. Because Harold had remarried, the letter also requested that Cherie, his wife, execute the correction mineral deed. Harold met with Grace's attorney shortly thereafter and indicated that he would not sign the correction mineral deed. However, Harold did not tell Grace that he would not sign the deed.

Grace testified that over the next several years, prior to her filing the petition in the present case, she had numerous conversations with Harold about signing the correction mineral deed. He generally put her off by saying that his attorney was reviewing the deed and that he would get to it later. Grace testified that during this time, Harold never told her that he would not execute the correction mineral deed and instead indicated that he would sign it after it had been reviewed. In 1988, Harold requested Grace's assistance with his participation in a federal farm program. Grace told Harold she would cooperate if he would sign the correction mineral deed. Harold promised he would sign the deed, and Grace assisted Harold by loaning him $60,000. Harold did not subsequently sign the deed.

In 1989, Harold and his attorney began a series of communications with Union Oil Company of California (Unocal) regarding royalties from mineral interests on one of the properties which had been misidentified in the 1979 mineral deed. Unocal

had been holding royalties in suspense since 1984 when Grace communicated her claim to a share of the royalties. In a letter to Unocal dated August 18, 1989, Harold's attorney stated that the statute of limitations had run on any action Grace might have brought to correct the legal descriptions in the 1979 mineral deed. In March 1990, Harold received a check from Unocal for royalties of $28,795.77.

Grace filed her first petition in the present action on February 6, 1990. In the petition, Grace requested that the district court order Harold to account to her for her share of the income from the mineral interests which were omitted or misidentified in the 1979 mineral deed. Grace filed various amended petitions. The fourth amended petition was filed January 21, 1991, and is the operative petition. Grace fashioned the petition to contain what she identified as four "causes of action." In the first "cause of action," Grace sought a declaration of the mineral interest rights of each party pursuant to the property settlement agreement. In the second "cause of action," Grace requested that the court quiet title in her name to her share of the mineral interests which were omitted or misidentified in the 1979 mineral deed. In the third "cause of action," Grace sought reformation of the 1979 mineral deed to correct the omissions and errors in the legal descriptions of the mineral interests transferred. Finally, in the fourth "cause of action," Grace sought an accounting for all proceeds received by Harold which were attributable to her shares of the mineral interests omitted or misidentified in the 1979 mineral deed.

In his answer to the fourth amended petition, Harold asserted, inter alia, that Grace's petition was barred by the statute of limitations and that Grace was guilty of laches such that it would be inequitable to permit her to recover on the petition. We note that in her petition, Grace had alleged facts regarding Harold's representations and promises that he would sign the correction mineral deed, Harold's intent that Grace rely on such representations, and her actual reliance on such representations. We note that such facts, if proven, could support a conclusion that Harold was equitably estopped from succeeding on his defenses.

The district court held a trial on the first three "causes of action" but stayed trial on the accounting "cause of action" pending

its decision on the first three issues. Following trial, the court issued a decree filed June 7, 1993. In the decree, the court summarily found for Harold and against Grace on the first "cause of action," for a declaration of rights, and on the third "cause of action," for reformation of the mineral deed. With regard to the second "cause of action," to quiet title, the court found generally for Grace and against Harold. The court specifically found that Grace's quiet title action accrued in 1984 when she discovered the errors. The court further determined that even if Grace's cause of action had accrued on August 15, 1979, Harold's representations over the years that he would sign a correction mineral deed effectively tolled the statute of limitations with respect to the quiet title action. The court also determined that Grace's "inexplicable failure" to press her claim in light of Harold's inaction "constitute[d] laches on her part such as to make it manifestly unjust to quiet title in her as of the date of the decree of dissolution." The court, however, made no finding regarding prejudice to Harold as a result of Grace's delay in filing her action. Based on its findings, the court issued an order quieting title in Grace's name to an undivided one-half interest in the mineral interests omitted or misidentified in the 1979 mineral deed. The court quieted title as of February 6, 1990, the date Grace filed her original petition.

Grace and Harold both filed motions for new trial which were denied by the district court. Grace appealed and Harold cross-appealed the decision. This court dismissed the appeal and cross-appeal after concluding that the decree filed June 7, 1993, was not a final order because the accounting portion of the action was still pending before the district court. *Olsen v. Olsen*, 248 Neb. 393, 534 N.W.2d 762 (1995).

Harold died in December 1995, and Cherie, his widow, as personal representative of his estate, was substituted as the defendant in the proceedings in the district court. However, for convenience, we will henceforward refer to Cherie, in her capacity as defendant, appellee, and cross-appellant in the instant case, as "Harold."

Trial on the accounting action was held on February 7, 2000. The district court issued an order dated June 23, 2000, in which it noted that the parties had stipulated to an accounting of proceeds received since February 6, 1990. The court approved the stipulation and noted the existence of an issue regarding the

check for $28,795.77 that Harold had received from Unocal in March 1990. The court concluded that because the check represented proceeds which had accrued prior to February 6, the payment was correctly made to Harold and should not be included in the accounting sought by Grace.

Although the order dated June 23, 2000, was file stamped on June 27, the district court clerk failed to notify counsel for Grace and Harold of the filing. The parties were not notified until an identical entry of judgment was filed on August 18. Grace filed a notice of appeal on September 13. On January 24, 2001, this court issued an order to show cause why the appeal should not be dismissed for lack of jurisdiction for failure to timely appeal the judgment entered June 27, 2000, or to show cause why the remedy was not in the district court under its authority to vacate a judgment due to mistake, neglect, or omission by the district court clerk. On February 6, 2001, the parties filed a joint motion for this court to dismiss the appeal on the ground that the parties intended to ask the district court to vacate its judgment due to error by the clerk. We dismissed the appeal on February 22.

The parties subsequently moved the district court to vacate the orders filed June 27 and August 18, 2000. On October 16, 2001, the court entered an order vacating the orders filed June 27 and August 18, 2000. On that same day, the court filed an order disposing of the accounting action which was effectively identical to the orders it vacated. Grace now appeals from the order filed October 16, 2001, and Harold cross-appeals.

## ASSIGNMENTS OF ERROR

Grace asserts that the district court erred in finding her guilty of laches and therefore quieting title as of February 6, 1990, rather than August 15, 1979. Grace makes additional assignments of error which, considering our disposition of this case, we need not consider.

In his cross-appeal, Harold asserts that the district court erred in failing to find that Grace's action to quiet title was completely barred by either the statute of limitations or laches.

## STANDARDS OF REVIEW

A quiet title action sounds in equity. *Burk v. Demaray,* 264 Neb. 257, 646 N.W.2d 635 (2002). In an appeal of an

equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS
*Cross-Appeal: Statute of Limitations.*

Harold argues in his cross-appeal that the statute of limitations barred Grace's action to quiet title or, in the alternative, that the district court's finding of laches should have barred all relief to Grace. We consider Harold's arguments regarding the statute of limitations first because if Grace's action was barred by the statute of limitations, then the other issues in this appeal would become moot. We treat the issues related to laches in the analysis of Grace's appeal.

Harold asserts that Grace's action to quiet title was barred by the statute of limitations. We determine that Harold is equitably estopped from asserting a statute of limitations defense. Harold notes that Neb. Rev. Stat. § 25-202 (Reissue 1989) provides in part, "An action for the recovery of the title or possession of lands, tenements, or hereditaments, or for the foreclosure of mortgages thereon, can only be brought within ten years after the cause of action shall have accrued." This court has held that § 25-202 is applicable to an action to quiet title to an interest in real estate. *Nemaha Nat. Resources Dist. v. Neeman*, 210 Neb. 442, 454, 315 N.W.2d 619, 626 (1982) ("a suit to quiet title is an action for the recovery of real property within the statute of limitations applying to such an action"). Harold argues that Grace's action to quiet title accrued in February 1979, when the decree of dissolution was entered, or on August 15, 1979, when the erroneous mineral deed was executed, and that therefore, Grace's petition filed February 6, 1990, was filed outside the 10-year period of limitations under § 25-202.

In its June 7, 1993, decree, the district court determined that the statute of limitations with respect to the quiet title action did not accrue until 1984, when Grace discovered the errors in the 1979 mineral deed. The court further stated that even if the action

had accrued in 1979, Harold's representations over the years that he would sign the correction mineral deed effectively tolled the statute of limitations.

Grace's action to quiet title arose from the fact that the 1979 mineral deed contained certain errors and omissions. Therefore, her action accrued on August 15, 1979, when the erroneous mineral deed was executed. Under the 10-year statute of limitations in § 25-202, the limitations period would normally have run on August 15, 1989. However, we conclude that because of his representations, promises, and conduct, Harold was equitably estopped from asserting the statute of limitations as a defense.

The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). The first prong of this test is met when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed. *Id.*

Equitable estoppel is not limited to circumstances of fraud. The doctrine of equitable estoppel may be applied to prevent an inequitable resort to a statute of limitations as well, and a defendant may, by his or her representations, promises, or conduct, be so estopped where the other elements of estoppel are present. *Id.* Equity is determined on a case-by-case basis when justice and fairness so require. Equity may be used under appropriate

circumstances, and equitable principles may prevent one from asserting a particular defense when it would be unfair or unjust to allow that person to do so. *Id.*

In the present case, the district court determined that even if Grace's cause of action had accrued on August 15, 1979, Harold's promises over the years that he would sign the correction mineral deed effectively tolled the statute of limitations with respect to the quiet title action. Although the court speaks in terms of a "tolling" of the statute of limitations, the facts of this case support a conclusion that Harold was equitably estopped from asserting the statute of limitations as a defense to Grace's action to quiet title.

■ A claim of equitable estoppel rests in equity, and in an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the trial court. *Id.* The record in this case indicates that after discovering the errors in the 1979 mineral deed in 1984, Grace had a correction mineral deed prepared. In 1985, Grace's attorney wrote a letter requesting Harold to execute the correction mineral deed. The attorney testified that some time after he sent the letter, Harold met with the attorney and advised him that he was not going to sign the correction mineral deed. Grace testified, however, that over the next several years, Harold repeatedly represented to her that he would execute the correction mineral deed after his attorney had reviewed it, and that Harold never indicated to her that he did not intend to sign that deed. Grace understood that Harold would sign the deed.

Grace testified that in 1988, Harold asked her to assist him with his participation in a federal farm program. Grace told him that she would cooperate only if he executed the correction mineral deed. Harold promised her that he would sign it, and Grace assisted him by loaning him $60,000. We note that Harold's promise in 1988 occurred within the 10-year limitations period under § 25-202 for Grace's quiet title action, which accrued in 1979.

Grace testified that she did not have much contact with Harold in 1989, but that in early 1990, she again asked him whether he was going to sign the correction mineral deed, and that he told her that he had not yet done it but was going to do

so. Grace filed her first petition in this case shortly thereafter, on February 6, 1990.

The evidence shows that in 1989, Harold and his attorney corresponded with Unocal regarding royalties from certain mineral interests that were misidentified in the 1979 deed. In a letter dated August 18, 1989, Harold's attorney stated to Unocal that the statute of limitations had run on any action Grace might bring to make a claim to the mineral interest. As noted above, Grace's cause of action accrued when the erroneous mineral deed was executed on August 15, 1979, and therefore, the 10-year limitations period under § 25-202 ended on August 15, 1989.

We determine that although Harold initially told Grace's attorney that he was not going to sign the correction mineral deed, he subsequently and repeatedly represented to Grace that he would sign the deed and never told her that he did not so intend. Grace understood that Harold would sign the deed. Furthermore, Harold reiterated his promise to sign in 1988 in order to induce Grace to assist him with his participation in a federal farm program. Harold's correspondence with Unocal in 1989 indicates that Harold was aware of the statute of limitations on Grace's claim. The evidence indicates that Harold was leading Grace to believe that he planned to sign the correction mineral deed in order to influence her not to file an action prior to the running of the statute of limitations, all the while knowing that he did not intend to sign the deed.

Harold's representations, promises, and conduct were such as to lull Grace into a false sense of security, thereby causing Grace to subject her claim to the bar of the statute of limitations. See *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). Equitable estoppel should be applied to prevent Harold from asserting the statute of limitations as a defense, because it would be unfair to allow Harold to raise that defense when his own promises and representations led to Grace's delay in filing her action.

Because we determine that equitable estoppel is appropriate in this case, Harold cannot assert the statute of limitations as a bar, and we, therefore, conclude that Grace's action will not be barred by the statute of limitations. Accordingly, albeit for different reasons, the district court did not err in rejecting Harold's

claim that Grace's case should be dismissed as time barred. Harold's assignment of error on cross-appeal with regard to the statute of limitations is therefore without merit.

*Appeal: Laches.*

Grace argues that the district court erred in finding her guilty of laches in bringing her action to quiet title. In his cross-appeal, Harold argues that the court erred in failing to find that laches completely barred Grace's action. Based on its finding of laches, the court ordered that title be quieted as of February 6, 1990, the date Grace filed her petition, rather than as of the date of the dissolution of the parties' marriage in February 1979 or the date of the erroneous mineral deed in August 1979. Pursuant to its ruling, the court determined in the accounting requested by Grace that Grace was not entitled to a share of the mineral interest proceeds accrued prior to February 6, 1990, including the Unocal proceeds. We conclude that Harold is precluded from asserting laches as a defense due to unclean hands and, therefore, that the district court erred in finding laches. Because the court erred in this finding, the court also erred in concluding that title should be quieted as of February 6, 1990, rather than August 15, 1979, and that Grace was not entitled to proceeds accrued prior to February 6, 1990.

Laches is an equitable defense, and in order to benefit from the operation of laches, a party must come to the court with clean hands. Under the doctrine of unclean hands, a person who comes into a court of equity to obtain relief cannot do so if he or she has acted inequitably, unfairly, or dishonestly as to the controversy in issue. *Manker v. Manker, supra.*

In the present case, Harold pled laches as an affirmative defense to Grace's claims. As discussed above, Harold's promises and representations were such that Harold was equitably estopped from asserting the statute of limitations as a defense. Under the same reasoning, because of his actions, Harold has unclean hands with respect to Grace's delay in filing her petition in this case, and pursuant to the doctrine of unclean hands, Harold is prevented from asserting laches as a defense. We therefore conclude that the district court erred in finding Grace guilty of laches.

Because laches was not available to Harold as a defense in this case, the district court erred in finding laches and in quieting title as of February 6, 1990. Instead, the court should have quieted title as of August 15, 1979, the date the erroneous mineral deed was executed. The court further erred in the accounting when it concluded that Grace was not entitled to a share of the proceeds, including the Unocal proceeds, which accrued prior to February 6, 1990. We therefore conclude that the portion of the court's order finding laches and its associated accounting must be reversed and the cause remanded to the district court to enter an order quieting title as of August 15, 1979, and to order an accounting for proceeds since that date.

## CONCLUSION

We conclude that Harold is equitably estopped from asserting the statute of limitations and is barred by unclean hands from asserting laches. In view of the foregoing, we conclude that the district court did not err in finding that Grace's action to quiet title was not barred by the statute of limitations and that title to Grace's share of the disputed property should be quieted in Grace. We also conclude, however, that the court erred in finding Grace guilty of laches. We therefore affirm that portion of the order in which the court held in favor of Grace on the quiet title action, but we reverse that portion of the order in which the court found Grace guilty of laches and erroneously quieted title as of February 6, 1990, rather than August 15, 1979. The accounting based on these errors must also be reversed. We remand this cause to the district court with instructions to amend its order to provide that title to Grace's share of the disputed property be quieted in Grace as of August 15, 1979, and to order an accounting for proceeds earned since that date.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.