MARLIN E. RAUSCHER, APPELLEE, V.
CITY OF LINCOLN, APPELLANT.
691 N.W.2d 844

Filed February 4, 2005. No. S-03-894.

Dana W. Roper, Lincoln City Attorney, and Joel D. Pedersen for appellant.

Vincent Valentino, of Angle, Murphy, Valentino & Campbell, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

The City of Lincoln (City) appeals the order of the district court for Lancaster County reversing the City's decision to deny the claim for unpaid wages filed by Marlin E. Rauscher, a retired City police officer. Following an evidentiary hearing, the district court ordered the City to pay Rauscher $2,685.79 in unpaid wages. The district court also ordered the City, in accordance with the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue 2004), to pay Rauscher's attorney fees. The City appeals.

We agree with the district court's ruling that the record in this case demonstrates that the City was equitably estopped from asserting the statute of limitations defense to Rauscher's wage claim. We further determine that the district court did not err in its determination that the City owed Rauscher $2,685.79 in unpaid wages. We conclude that the district court did not err in ordering the City to pay Rauscher's attorney fees in accordance with the Nebraska Wage Payment and Collection Act. Attorney fees are also awarded to Rauscher in connection with this appeal. We therefore affirm the district court's decision and enter orders accordingly.

## STATEMENT OF FACTS

Rauscher worked as a police officer in the City's police department. He was employed by the City as a police officer during two separate time periods. His initial employment began in April 1962 and continued until March 31, 1963, when he terminated his employment. He rejoined the police department in late summer 1965 and continued his employment with the department until his retirement on February 14, 2001. Although there was some dispute at the district court level concerning Rauscher's first day of employment in 1965, the district court found that Rauscher began working on August 30, a finding the City does not directly dispute on appeal. The two wage-related issues in this appeal occurred during Rauscher's second period of employment with the City's police department. The first issue involves an alleged failure to pay Rauscher for his first 40 hours of employment, and the second issue involves an alleged failure to pay Rauscher for 56 hours of employment due to the implementation of a pay lag.

On February 22, 2001, Rauscher received his final paycheck from the City. Upon receipt of his check, Rauscher determined certain wages he believed were owed to him were not included in the paycheck. On February 28, Rauscher filed a claim with the City for unpaid wages pursuant to Neb. Rev. Stat. § 15-840 (Reissue 1997). The claim was later amended on July 16.

Section 15-840 governs cities of the primary class and provides:
All liquidated and unliquidated claims and accounts payable against the city shall: (1) Be presented in writing; (2) state the name of the claimant and the amount of the claim; and (3) fully and accurately identify the items or services for

which payment is claimed or the time, place, nature, and circumstances giving rise to the claim. The finance director shall be responsible for the preauditing and approval of all claims and accounts payable, and no warrant in payment of any claim or account payable shall be drawn or paid without such approval. In order to maintain an action for a claim, other than a tort claim as defined in section 13-903, it shall be necessary, as a condition precedent, that the claimant file such claim within one year of the accrual thereof, in the office of the city clerk, or other official whose duty it is to maintain the official records of a primary-class city.

Rauscher's claim, as amended, sought a total of 96 hours of unpaid wages, arising from two distinct periods of time. The first time period was from August 30 to September 3, 1965, during which Rauscher stated that the City withheld 40 hours of pay from his paycheck. The second time period began in September 1975 and continued through December of that year. Rauscher asserted that in September 1975, the City implemented a "pay lag" and withheld a total of 56 hours of pay from his paychecks over a 16-week period. Rauscher's claim, as amended, sought a total of $2,685.79 in back wages, representing 96 hours at the rate of $27.977 per hour.

In a letter dated November 7, 2001, the City stated that it had engaged in "a thorough review of [Rauscher's] claim [as amended]" and concluded that Rauscher had "not been harmed in any manner, either with respect to . . . payment received for work in 1965 or thereafter when the City instituted a pay lag." The City denied Rauscher's claim.

Rauscher appealed the City's denial of his wage claim pursuant to Neb. Rev. Stat. § 15-841 (Reissue 1997), which controls the appeal process relative to cities of the primary class. Section 15-841 provides that "[a]ny . . . claimant, after the disallowance in whole or in part of any such claim, may appeal therefrom to the district court of the county in which the city is situated in accordance with the procedures set forth in sections 15-1201 to 15-1205." Pursuant to Neb. Rev. Stat. § 15-1204 (Reissue 1997), Rauscher filed a petition with the district court. On June 7, 2002, Rauscher filed his second amended petition (petition), the operative petition for purposes of this appeal. In his petition, Rauscher

sought, inter alia, unpaid wages in the amount of $2,685.79. In his prayer for relief, Rauscher sought his court costs and attorney fees pursuant to the Nebraska Wage Payment and Collection Act, § 48-1228 et seq.

On August 9, 2002, the City filed an answer to Rauscher's petition. In its answer, the City denied it owed Rauscher unpaid wages and asserted as an affirmative defense that Rauscher's claim for wages was barred by the 1-year statute of limitations contained in § 15-840.

On April 1 and 2, 2003, the district court held an evidentiary hearing on Rauscher's petition pursuant to Neb. Rev. Stat. § 15-1205 (Reissue 1997), which provides, inter alia, that "[t]he district court shall hear the appeal as in equity and without a jury and determine anew all questions raised before the city." A total of five witnesses testified, and numerous exhibits were received into evidence, including Rauscher's pay stubs from his 1975 and 1976 paychecks and several memoranda prepared in 1975 by various City officials explaining the pay lag and the accounting for pay due when an employee left the City's service.

At trial, Rauscher testified concerning his claim for unpaid wages. As to the 40 hours of wages in 1965 that Rauscher claimed the City owed him, Rauscher explained that upon rejoining the City's police force on August 30, 1965, his first 40 hours of pay, from August 30 to September 3, were withheld and not paid to him. Rauscher stated that when he did not receive these wages, he spoke with Walter Mitchell, who was at that time the City's personnel director. As a result of his conversation with Mitchell, Rauscher testified as to his understanding to the effect that this withholding of wages was "a standard withholding that [the City did] with all of the employees" and that the 40 hours of wages would be paid to him in his final paycheck after he terminated his employment with the City.

In this regard, Rauscher testified that during his employment with the City from 1962 to 1963, his first 40 hours of wages had also been withheld by the City. He stated that after he ended this first period of employment on March 31, 1963, he received the previously withheld 40 hours of pay in his final paycheck.

Rauscher acknowledged that he knew in September 1965 that the City owed him for 40 hours of wages. Rauscher stated,

however, that based upon his understanding, partly as a result of his discussion with Mitchell and his previous experience with the City, he believed the 40 hours of wages withheld in 1965 would be paid to him when he terminated his employment with the City.

As to the 1975 wages that Rauscher claimed the City had withheld as a result of a pay lag, Rauscher explained that in September 1975, the City implemented a new schedule for calculating pay periods and releasing paychecks. As part of that process, Rauscher stated that Mitchell met with the City's police officers to explain the new schedule. According to Rauscher, he understood that as a result of the new schedule, the City was implementing a pay lag in which the City would withhold 7 hours of pay from 8 separate pay periods, or 16 weeks, beginning in September 1975 and ending in December 1975, for a total of 56 hours of pay.

Rauscher testified that as a result of the comments by Mitchell, Rauscher understood he would receive the wages withheld as a result of implementation of the pay lag when he terminated his employment with the City. Rauscher also testified that at the time Mitchell met with the police officers, Mitchell distributed a memorandum describing the pay lag. The memorandum, a copy of which was entered into evidence, explained the new pay schedule as well as the pay lag. The memorandum provided in part that "[a]t such time as an employee may leave the City service, there will be an accounting for all pay due." Rauscher also introduced into evidence copies of his pay stubs from this September to December 1975 time period, showing the pay withheld as a result of the pay lag. Rauscher testified that neither his 1975 pay stubs nor his 1976 pay stubs, the latter of which were also introduced into evidence, showed payment of the wages withheld as a result of the pay lag.

Rauscher acknowledged that he knew by December 29, 1975, that the wages withheld as a result of the 1975 pay lag had not been paid to him. Rauscher explained, however, that based upon his meeting with Mitchell and the memoranda Mitchell distributed to the police officers, Rauscher was led to believe that the 56 hours of wages withheld as a result of the 1975 pay lag would be paid to him when he terminated his employment with the City.

Rauscher testified that following his retirement on February 14, 2001, he received his final paycheck from the City. He stated

that when reviewing that check, he determined that the 40 hours of wages the City had withheld in 1965 and the 56 hours of wages the City had withheld in 1975 were not included. On February 28, he filed his claim with the City which he later amended for his total unpaid wages in the amount of $2,685.79.

In its order filed May 5, 2003, the district court reversed the City's decision denying Rauscher's claim. The district court concluded that based upon the evidence in the record, Rauscher had relied upon the City's representations that the unpaid wages would be paid to him upon the termination of his employment with the City and that he had relied upon these representations in not filing his claim until he did not receive the unpaid wages following his retirement. The district court concluded that the City was "estopped from now asserting a limitations issue on such [claim] when it was [the City's] affirmative representations that caused any delays in asserting the claim." The district court further determined that Rauscher was entitled to the wages he sought, and it entered an order in Rauscher's favor in the amount of $2,685.79. In its order, the district court also directed Rauscher to file a request for attorney fees.

On May 9, 2003, Rauscher filed an "Application for Attorney Fees and Expenses," which came on for hearing on June 20. In an order filed July 10, the district court sustained Rauscher's application for attorney fees and ordered the City to pay Rauscher $3,450 in attorney fees and $485.51 in costs. The City appeals the district court's award of unpaid wages and attorney fees to Rauscher. It has not appealed the award of costs.

## ASSIGNMENTS OF ERROR

The City assigns various errors. In summary, the City claims, restated, that the district court erred (1) in determining that the City was equitably estopped from asserting the statute of limitations and (2) in determining that Rauscher was entitled to an award of attorney fees under the Nebraska Wage Payment and Collection Act.

## STANDARDS OF REVIEW

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided

that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004).

 Statutory interpretation presents a question of law. *Semler v. Sears, Roebuck and Co.*, 268 Neb. 857, 689 N.W.2d 327 (2004). When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *City of Gordon v. Ruse*, 268 Neb. 686, 687 N.W.2d 182 (2004).

## ANALYSIS

### TIMELINESS OF CLAIM UNDER § 15-840 AND EVIDENCE OF UNPAID WAGES

The City asserts that Rauscher's claim for unpaid wages was barred by the statute of limitations. We agree with the ruling of the district court that the City is equitably estopped from asserting a statute of limitations defense. The City also asserts that the evidence failed to establish unpaid wages were owed. We agree with the district court that Rauscher satisfactorily established that the City owed him unpaid wages of $2,685.79.

Section 15-840 provides in part as follows: "In order to maintain an action for a claim . . . it shall be necessary, as a condition precedent, that the claimant file such claim within one year of the accrual thereof . . . ." The City argues that Rauscher's claim for unpaid wages accrued within 1 year of the City's alleged failure to pay Rauscher those wages. In this regard, the City notes that Rauscher acknowledged that he knew by September 1965 and December 1975, respectively, that the City owed him unpaid wages. The City claims that the 1-year statute of limitations in § 15-840 had already run when Rauscher filed his claim in 2001.

Relying on the record which included admissible evidence of the City's actions and representations, the district court determined that Rauscher was possessed of a good faith belief that he would receive the withheld wages when he terminated his employment with the City. As a result, the district court concluded

that the City was estopped from asserting that the statute of limitations had run on Rauscher's claim.

The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Olsen v. Olsen*, 265 Neb. 299, 657 N.W.2d 1 (2003). We have observed that equitable estoppel may be successfully asserted when one lulls his or her adversary into a false sense of security, thereby causing that person to subject his or her claim to the bar of the statute of limitations, and then pleads the very delay caused by his or her conduct as a defense to the action when it is filed. *Id.*

We have recently noted that equitable estoppel is not limited to circumstances of fraud. The doctrine of equitable estoppel may be applied to prevent an inequitable resort to a statute of limitations as well, and a defendant may, by its representations, promises, or conduct, be so estopped where the other elements of estoppel are present. *Id.* Equity is determined on a case-by-case basis when justice and fairness so require. Equity may be used under appropriate circumstances, and equitable principles may prevent one from asserting a particular defense when it would be unfair or unjust to allow that person to do so. *Id.*

We have previously recognized that the State and its political subdivisions can be equitably estopped from relying on the statute of limitations upon a showing that the elements of equitable estoppel have been met, as well as compelling circumstances, where right and justice so demand in the interest of preventing manifest injustice. See *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999) (concluding that City of Lincoln

could be equitably estopped from asserting statute of limitations defense against suit brought pursuant to Political Subdivisions Tort Claims Act).

■ A claim of equitable estoppel rests in equity. *Olsen v. Olsen, supra.* Additionally, pursuant to § 15-1205, Rauscher's appeal of the City's denial of his wage claim "shall [be heard by the district court] as in equity." In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the trial court. *Trieweiler v. Sears,* 268 Neb. 952, 689 N.W.2d 807 (2004).

We have reviewed the record and note that there is evidence in the record, some of which we have summarized, showing that in 1965 and again in 1975, the City withheld wages from Rauscher's paycheck. Rauscher introduced documentary evidence in the form of a City memorandum and pay stubs in support of his testimony that wages of $2,685.79 were withheld and not paid. Rauscher testified that by virtue of the City's conduct and statements, he believed he would receive his unpaid wages when he terminated his employment with the City. There is also evidence in the record that during his period of employment from 1962 to March 31, 1963, the City had withheld wages from Rauscher's paycheck and that the withheld funds were paid to Rauscher when he left the City's employment. The record supports the district court's determination that Rauscher relied upon the assurances he received from the City, as well as his previous experience with the City, and as a result, did not pursue a wage claim when the City initially failed to pay Rauscher the wages he was due.

We have considered the parties' arguments and the record presented on appeal. It can be fairly said, based upon Rauscher's testimony, that he was lulled into a false sense of security that his unpaid wages would be paid upon the termination of his employment by the City, thereby causing Rauscher to subject his claim to a statute of limitations defense. We agree with the district court that the elements of equitable estoppel have been established and that Rauscher has demonstrated compelling circumstances, such that equitable estoppel should be applied to prevent the City from asserting the statute of limitations, because it would be unjust to allow the City to raise that defense when its own actions led to

Rauscher's delay in pursuing his claim. See *Woodard v. City of Lincoln, supra*.

On appeal, the City claims that it does not owe Rauscher wages attributable to the implementation of the pay lag in 1975. The City notes that it presented evidence intended to show that the wages withheld as a result of the 1975 pay lag had been repaid to Rauscher in December 1975. This evidence conflicts with Rauscher's evidence. The district court heard and observed the witnesses and accepted one version of the facts rather than another, and we give weight to the district court's resolution of this issue and its findings for which there is evidence that the City owed Rauscher $2,685.79. See *Trieweiler v. Sears, supra*.

Because equitable estoppel is appropriate in this case and the City cannot assert the statute of limitations as a defense, we agree with the district court that Rauscher's claim for unpaid wages was not barred by the statute of limitations. Further, the district court did not err in ordering the City to pay Rauscher unpaid wages in the amount of $2,685.79.

### ATTORNEY FEES UNDER NEBRASKA WAGE PAYMENT AND COLLECTION ACT

After the district court entered judgment in his favor as to his unpaid wages, Rauscher filed an application for attorney fees in the amount of $3,450. The district court sustained the application. The City contends on appeal that the district court erred in awarding Rauscher attorney fees under the Nebraska Wage Payment and Collection Act, § 48-1228 et seq., in this proceeding brought under § 15-841.

With regard to an award of attorney fees, § 48-1231 provides in relevant part as follows:

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover (1) the full amount of the judgment and all costs of such suit and (2) if such employee has employed an attorney in the case, an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent

of the unpaid wages. If the cause is taken to an appellate court and the plaintiff recovers a judgment, the appellate court shall tax as costs in the action, to be paid to the plaintiff, an additional amount for attorney's fees in such appellate court, which fees shall not be less than twenty-five percent of the unpaid wages.

The City claims the district court erred in awarding Rauscher attorney fees under § 48-1231, because Rauscher either did not plead a separate cause of action for attorney fees in the instant case or failed to file a separate lawsuit under the Nebraska Wage Payment and Collection Act. According to the City's argument, "§ 48-1231 provides a separate and independent cause of action for the recovery of wages . . . . Rather than proceed with a claim for unpaid wages under . . . § 48-1231, [Rauscher] chose to submit a claim to the City . . . and appealed from the denial of that claim." Brief for appellant at 33. The City also asserts that because Rauscher did not bring a separate "action under the [Nebraska] Wage Payment and Collection Act," id. at 32, he is not entitled to an award of attorney fees. The City misperceives the provisions of the Nebraska Wage Payment and Collection Act. We conclude that the district court did not err in awarding Rauscher attorney fees in the district court under the Nebraska Wage Payment and Collection Act in this case.

At the outset, we note that in his prayer for relief in the petition, Rauscher sought attorney fees against the City under the Nebraska Wage Payment and Collection Act. We further note that we have approved an award of attorney fees under the Nebraska Wage Payment and Collection Act in a wage claim against a city of the metropolitan class brought under Neb. Rev. Stat. § 14-813 (Reissue 1997). *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001). The parties do not dispute that the Nebraska Wage Payment and Collection Act applies to wage claims against the City. Compare *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990) (noting that in 1988, Nebraska Wage Payment and Collection Act was amended to include political subdivisions as employers covered by act).

Although our comments were made prior to the inclusion of political subdivisions as employers under the Nebraska Wage Payment and Collection Act, we find our observations made in

*Thompson v. City of Omaha, supra*, instructive here. Indeed, in *Thompson*, we rejected an argument similar to that raised by the City in the instant appeal. In *Thompson*, the appellants claimed that the Nebraska Wage Payment and Collection Act was a "special provision in regard to wage claims" and was an alternate proceeding to the statutory provisions regarding filing claims with the city. 235 Neb. at 349, 455 N.W.2d at 540. We disagreed, and observed that in that action against a city of the metropolitan class, an "[a]pplication of the [Nebraska] Wage Payment and Collection Act would not alter the need to satisfy the requisites of the claims statutes." 235 Neb. at 350, 455 N.W.2d at 540. More importantly, in *Thompson*, we stated that the "[Nebraska] Wage Payment and Collection Act provides for the award of attorney fees and costs to a successful wage claimant and does not concern conditions governing claims against a city." 235 Neb. at 350, 455 N.W.2d at 540.

We are asked to apply § 48-1231 to the instant case. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004). Furthermore, it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. *Hall v. City of Omaha*, 266 Neb. 127, 663 N.W.2d 97 (2003). Contrary to the City's argument, in a wage claim brought under § 15-841 against a city of the primary class such as the case before us, there is nothing in the plain language of § 48-1231 that requires an employee to plead a specific cause of action for attorney fees or to file a separate proceeding for attorney fees in order to receive an award of attorney fees under the Nebraska Wage Payment and Collection Act. It is consistent with the language of § 48-1231 that an employee pursue his or her claim against a city of the primary class in the district court under § 15-841 and, if successful in that proceeding, apply for an award of attorney fees under the Nebraska Wage Payment and Collection Act as a successful wage claimant therein.

In the instant case, Rauscher satisfied the requirements of the Nebraska Wage Payment and Collection Act. He "establishe[d] a

claim and secure[d] judgment on the claim" as required under § 48-1231 of the act. As such, he was "a successful wage claimant." See *Thompson v. City of Omaha,* 235 Neb. at 350, 455 N.W.2d at 540. Under the provisions of the Nebraska Wage Payment and Collection Act, Rauscher was entitled to an award of attorney fees, and we conclude that the district court did not err in ruling in favor of Rauscher and against the City in the amount of $3,450 for Rauscher's attorney fees incurred in the district court in this matter.

### REMAINING ASSIGNMENTS OF ERROR

We have considered the City's remaining assignments of error, and we conclude they are without merit.

### ATTORNEY FEES ON APPEAL

Rauscher has filed an "Application for Attorney Fees and Expenses" in connection with this appeal pursuant to § 48-1231. The application is limited to a claim of attorney fees and is supported by an affidavit. See Neb. Ct. R. of Prac. 9F (rev. 2001). As noted above, § 48-1231 provides for an award of attorney fees "[i]f the cause is taken to an appellate court" and the employee is the successful party. Because we have determined that the district court's judgment in favor of Rauscher should be affirmed, Rauscher's application for attorney fees in this appeal is granted. Rauscher's application for attorney fees in this court in the amount of $3,540 is granted.

### CONCLUSION

We agree with the district court that the City was equitably estopped from asserting the statute of limitations, and therefore the district court did not err in determining that Rauscher's claim for unpaid wages was not barred by the statute of limitations. The evidence supports the district court's judgment in Rauscher's favor in the amount of $2,685.79. We further determine that the district court did not err in awarding Rauscher his attorney fees incurred in this action in the district court pursuant to the Nebraska Wage Payment and Collection Act. We, therefore, affirm the decision of the district court in its entirety. Rauscher's application for attorney fees on appeal to this court made under the Nebraska Wage

Payment and Collection Act is granted, and we award Rauscher $3,540 pursuant to that application.

AFFIRMED.