DOROTHY RENTER, APPELLANT AND CROSS-APPELLEE, V.
VANCE SIEDENBURG, APPELLEE AND CROSS-APPELLANT,
AND ITT HARTFORD, A CORPORATION, APPELLEE.

739 N.W.2d 216

Filed August 21, 2007. No. A-05-1546.

Dave B. Eubanks, of Pahlke, Smith, Snyder, Petitt & Eubanks,
G.P., for appellant.

John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellee Vance Siedenburg.

Brian M. Mumaugh and Kerri J. Atencio, of Holland & Hart, L.L.P., for appellee ITT Hartford.

INBODY, Chief Judge, and CARLSON and MOORE, Judges.

CARLSON, Judge.

## INTRODUCTION

Dorothy Renter filed a declaratory judgment action in the district court for Scotts Bluff County to determine her and Vance Siedenburg's respective rights regarding an annuity contract issued by ITT Hartford. The trial court granted Siedenburg's motion for summary judgment. Renter appeals, and Siedenburg cross-appeals. Based on the analysis that follows, we affirm.

## BACKGROUND

Siedenburg is the oldest of Renter's five children. In February 1997, Renter's critically ill brother gifted her four certificates of deposit totaling over $400,000. On February 26, a bank account in the name of Renter, Siedenburg, and Renter's husband was opened at Platte Valley National Bank in Scottsbluff, Nebraska. On February 27 and 28, the proceeds of the four certificates of deposit were deposited into the Platte Valley National Bank account.

On March 12, 1997, Renter, Siedenburg, and Renter's husband met with an investment representative regarding an appropriate investment of the money previously deposited into the Platte Valley National Bank account. At that meeting, a decision was made to purchase a variable annuity contract from ITT Hartford, also known as ITT Hartford Life and Annuity Insurance Company, which contract is the subject of the case before us. An application for a variable annuity contract was prepared, and it was signed by Renter as "Contract Owner" and by Siedenburg as "Joint Contract Owner." Renter testified that when she signed the application, she understood Siedenburg was going to be a joint contract owner, and that she was okay with that at the time. Thereafter, consistent with the parties' application, ITT Hartford issued an "Individual

Flexible Premium Variable Annuity Contract" which reflected an initial premium payment of $400,000 and listed both Renter and Siedenburg as contract owners.

Subsequently, the relationship between Renter and Siedenburg deteriorated and Renter decided she did not want Siedenburg to be co-owner of the annuity contract. Beginning sometime in 1998, Renter asked Siedenburg on several occasions to remove his name from the annuity, but Siedenburg refused. In 2004, Renter made an attempt to unilaterally terminate the annuity contract by forging Siedenburg's signature on a document she sent to ITT Hartford requesting that the annuity be cashed out and also forging Siedenburg's signature on the check she subsequently received from ITT Hartford. However, after Renter deposited the check into a bank, she was notified that payment on the check had been stopped. The money went back to ITT Hartford and was deposited in the same funds from which it was taken. Renter was also informed that any further action in regard to the annuity would require signature guaranteed requests by each of the joint owners.

On September 22, 2004, Renter filed an amended complaint for declaratory judgment to determine her and Siedenburg's respective rights regarding the ITT Hartford annuity. In her amended complaint, Renter alleged that ITT Hartford issued a variable annuity contract to her in which Siedenburg was listed as a co-owner, that she contributed the entire $400,000 premium to purchase the annuity contract, that Siedenburg contributed no part of the premium, that he should be removed as a joint owner of the annuity contract because he has made no contribution to the fund and has no claim to any of the proceeds, and that the court should determine that Renter is the sole owner of the annuity contract and may redeem the contract in her own name and have the proceeds distributed solely to her. In Siedenburg's answer and counterclaim, he asserted that the rights of the parties are defined in the annuity contract, that neither party may redeem the contract without the consent of the other, and that Renter's cause of action is frivolous.

On May 31, 2005, Siedenburg filed a motion for summary judgment. On June 28, a hearing was held on the motion. On December 20, 2005, the trial court entered a final, appealable

order in which it granted Siedenburg's motion for summary judgment. The trial court found that the net contribution rule set forth in Neb. Rev. Stat. § 30-2722 (Reissue 1995) is not applicable to the annuity contract, as Renter had claimed, and that the parties' rights and obligations are governed by the provisions contained in the annuity contract.

## ASSIGNMENTS OF ERROR

Renter assigns that the trial court erred in granting Siedenburg's motion for summary judgment.

On cross-appeal, Siedenburg assigns that the trial court erred in (1) failing to base its decision on the fact that Renter's construction of § 30-2722 violates the principle of freedom of contract and (2) failing to base its decision in part on the fact that even if § 30-2722 applies as Renter contends, the parties contracted for different ownership provisions.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pogge v. American Family Mut. Ins. Co.*, 272 Neb. 554, 723 N.W.2d 334 (2006); *Sjuts v. Granville Cemetery Assn.*, 272 Neb. 103, 719 N.W.2d 236 (2006). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Pogge v. American Family Mut. Ins. Co., supra*; *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005).

## ANALYSIS

Renter assigns that the trial court erred in granting Siedenburg's motion for summary judgment, because there is a genuine issue of fact whether the net contribution rule found in § 30-2722 applies to the annuity contract at issue. The trial court found that the statute was inapplicable to the annuity contract. Section 30-2722 is part of the "Nonprobate Transfers" article of the Nebraska Probate Code. Section 30-2722(b)

provides in part: "During the lifetime of all parties, an account belongs to the parties in proportion to the net contribution of each to the sums on deposit, unless there is clear and convincing evidence of a different intent." Renter contends that § 30-2722(b) applies to the annuity at issue and that thus, she is entitled to terminate the annuity on her own and receive all of the proceeds, because she contributed 100 percent of the funds used to purchase the annuity.

The meaning of a statute is a question of law. *Zach v. Nebraska State Patrol*, 273 Neb. 1, 727 N.W.2d 206 (2007); *Bohaboj v. Rausch*, 272 Neb. 394, 721 N.W.2d 655 (2006). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

The application of § 30-2722(b) to the annuity contract depends on whether the annuity constitutes an "account." Neb. Rev. Stat. § 30-2716(1) (Reissue 1995) defines "account" as "a contract of deposit between a depositor and a financial institution, and includes a checking account, savings account, certificate of deposit, and share account." For the annuity to be an "account," it must be a "contract of deposit" and ITT Hartford must be a "financial institution."

We first address whether the annuity is a contract of deposit. The definition of "account" specifically states that a contract of deposit includes a checking account, savings account, certificate of deposit, and share account. A share account is a member's balance held by a credit union and established by a member. Neb. Rev. Stat. § 21-1722 (Reissue 1997). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005); *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004). Furthermore, it is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. *Rauscher v. City of Lincoln, supra*; *Hall v. City of Omaha*, 266 Neb. 127, 663 N.W.2d 97 (2003).

Based on the plain, direct, and unambiguous words used in the statute to describe the types of arrangements that are contracts of deposit, it is clear to us that the annuity contract is not a checking account, a savings account, a certificate of deposit, or a share account. Further, the way the statute is worded does not allow for an interpretation that other types of arrangements besides those listed in the definition may be included in the definition. The "account" definition specifically states what types of arrangements are considered contracts of deposit. To conclude that the list is not exhaustive and that other arrangements such as annuities may fall within the definition would require us to read a meaning into a statute that is not there.

We further conclude that even if § 30-2716(1) could be interpreted to include arrangements other than those listed in the statute, an annuity does not fit within the term "contract of deposit" as it is commonly defined. A "deposit" is "[t]he act of giving money or other property to another who promises to preserve it or use it and return it in kind; esp., the act of placing money in a bank for safety and convenience." Black's Law Dictionary 471 (8th ed. 2004). A "deposit contract" is "[a]n agreement between a financial institution and its customer governing the treatment of deposited funds and the payment of checks and other demands against the customer's account." *Id.* at 344.

Annuities have been defined as "contracts under which the purchaser makes one or more premium payments to the issuer in exchange for a series of payments, which continue either for a fixed period or for the life of the purchaser or a designated beneficiary." *NationsBank of N. C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 254, 115 S. Ct. 810, 130 L. Ed. 2d 740 (1995). In a variable annuity, which is what we have in the present case, "the purchaser's money is invested in a designated way and payments to the purchaser vary with investment performance." 513 U.S. at 254. The annuity contract at issue gives the option to allocate the assets among various subaccounts, i.e., mutual funds, and the payments vary based on the performance of the investments Renter and Siedenburg chose. Thus, the annuity contract is much different from a contract of deposit, because ITT Hartford made no promise to preserve the premium money or to use it and return it in kind. The

annuity is similar to an investment, not a deposit. Accordingly, the annuity contract is not a "contract of deposit" and, thus, not an "account" as defined in § 30-2716(1). Therefore, the net contribution rule set forth in § 30-2722 does not apply.

Our analysis regarding the application of § 30-2722 could end here. However, for the sake of completeness, we further discuss whether ITT Hartford is a "financial institution" as used in the definition of "account." As previously stated, an "account" is defined in § 30-2716(1) as "a contract of deposit between a depositor and a financial institution." Under § 30-2716(4), "[f]inancial institution means an organization authorized to do business under state or federal laws relating to financial institutions, and includes a bank, trust company, savings bank, building and loan association, savings and loan company or association, and credit union."

It is easily apparent that ITT Hartford is not a bank, trust company, savings bank, building and loan association, savings and loan company or association, or a credit union. ITT Hartford describes itself in the annuity contract as a stock life insurance company. Further, Renter's amended complaint alleges that ITT Hartford is a corporation organized under the laws of the State of Connecticut and is "authorized to engage in the business of issuing policies of insurance including variable annuity contracts in . . . Nebraska."

ITT Hartford does not fit within the entities listed in the definition of financial institution, and the language used in the definition cannot be interpreted in such a way as to conclude that other entities may be included in the definition. As previously set forth, statutory language is to be given its plain and ordinary meaning and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. See, *Rauscher v. City of Lincoln*, 269 Neb. 267, 691 N.W.2d 844 (2005); *Arthur v. Microsoft Corp.*, 267 Neb. 586, 676 N.W.2d 29 (2004). Giving the language its plain and ordinary meaning, the list of entities is a complete listing of what entities are included. A different conclusion would result if the definition contained open ended language, such as "or other similar entities."

In addition, as the trial court found, insurance companies are authorized to do business in this state pursuant to laws relating to insurance—Neb. Rev. Stat. § 44-101 et seq. (Reissue 2004 & Cum. Supp. 2006)—rather than "laws relating to financial institutions" as required by § 30-2716(4). We conclude that ITT Hartford is not a financial institution as defined in § 30-2716(4) and, thus, that the annuity at issue is not an account for this additional reason. Accordingly, we conclude as a matter of law that the net contribution rule set forth in § 30-2722 does not apply to the annuity contract at issue. Thus, the trial court did not err in so concluding.

In granting Siedenburg's motion for summary judgment, the trial court also concluded that the parties' rights and obligations are governed by the provisions in the annuity contract. We agree. The annuity in question is a contract and should be construed as such. The construction of a contract is a matter of law. *Misle v. HJA, Inc.*, 267 Neb. 375, 674 N.W.2d 257 (2004); *Cornhusker Internat. Trucks v. Thomas Built Buses*, 263 Neb. 10, 637 N.W.2d 876 (2002). When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract. *Misle v. HJA, Inc., supra*; *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002).

The annuity contract clearly identifies Renter and Siedenburg as contract owners. The "Contract Control Provisions" section of the contract provides:

> The Contract Owner has the sole power to exercise all the rights, options and privileges granted by this contract or permitted by the Company and to agree with the Company to any change in or amendment to the contract. . . . In the case of joint Contract Owners, each Contract Owner alone may exercise all rights, options and privileges, *except with respect to the Termination and Partial Surrender/Annual Withdrawal Amount Provisions and change of ownership.*

(Emphasis supplied.)

The "Full Surrender" provision included in the "Termination Provisions" of the contract states that at any time prior to the annuity commencement date, the contract owner has the right to terminate the contract by making a written request. When such request is made, the termination value of the contract may be taken in the form of a cash settlement.

Based on the clear, unambiguous terms of the annuity contract, Renter and Siedenburg are both owners and when there are joint owners, any change of ownership or termination must be agreed to by all owners. Thus, Renter cannot unilaterally remove Siedenburg as an owner, nor can she terminate the contract without Siedenburg's consent. Under the terms of the contract, the fact that Renter contributed 100 percent of the premium amount to purchase the annuity contract does not give her any greater rights than those of Siedenburg as co-owner.

Accordingly, we conclude that the trial court did not err in granting Siedenburg's motion for summary judgment. Renter's assignment of error is without merit.

 Having concluded that the trial court did not err in granting Siedenburg's motion for summary judgment, we need not address Siedenburg's assignments of error on cross-appeal. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006); *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005).

## CONCLUSION

We conclude as a matter of law that the net contribution rule set forth in § 30-2722 is not applicable to the annuity contract at issue and that Renter's and Siedenburg's rights are governed by the provisions contained within the annuity contract. Therefore, Siedenburg is co-owner of the annuity and the ownership of the annuity cannot be changed without his approval, nor can the annuity be terminated without his approval. Accordingly, we affirm the judgment of the trial court granting Siedenburg's motion for summary judgment.

AFFIRMED.