JEROME M. HALL, APPELLANT, V. CITY OF OMAHA, NEBRASKA,
A MUNICIPAL CORPORATION, APPELLEE.

663 N.W.2d 97

Filed June 13, 2003.   No. S-02-578.

John E. Corrigan, of Law Office of John P. Fahey, P.C., for appellant.

Paul D. Kratz, Omaha City Attorney, and Bernard J. in den Bosch for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MCCORMACK, J.

## NATURE OF CASE

In this appeal, we are asked to interpret the term "workday" for purposes of military leave found in Neb. Rev. Stat. § 55-160 (Reissue 1998).

## BACKGROUND

Appellant, Jerome M. Hall, is a firefighter for the Omaha Fire Department and at all times relevant to this appeal, served as a military reservist. As a member of the reserves, Hall was entitled to paid military leave under § 55-160, which at the time this case was filed, provided in relevant part:

All employees, including elected officials of the State of Nebraska, or any political subdivision thereof, who shall be members of the National Guard, Army Reserve, Naval Reserve, Marine Corps Reserve, Air Force Reserve, and Coast Guard Reserve, shall be entitled to leave of absence from their respective duties, *without loss of pay*, on all days during which they are employed with or without pay under the orders or authorization of competent authority in the active service of the state or of the United States, for not to exceed fifteen *workdays* in any one calendar year. Such leave of absence shall be in addition to the regular annual leave of the persons named herein.

(Emphasis supplied.) The collective bargaining agreement between appellee, City of Omaha, Nebraska (City), and the Professional Firefighters Association of Omaha, Local No. 385, mirrors the language in the state statute providing military leave of absence, except the agreement contains the language 15 "days" instead of 15 "workdays." The agreement was based on the state statute.

We note that this appeal is a matter of last impression because § 55-160 has been amended and no longer provides paid leave in terms of workdays. The amended statute provides that "[m]embers who normally work or are normally scheduled to work one hundred twenty hours or more in three consecutive weeks shall receive a military leave of absence of one hundred twenty hours each calendar year." See 2002 Neb. Laws, L.B. 722 (effective date July 20, 2002).

Duties within the fire department are divided into two primary functions, suppression and bureau. Hall is a member of the suppression personnel. Suppression personnel respond to service calls such as fire and other emergencies. They work 24-hour shifts from 7 a.m. to 7 a.m. the following day. These employees are then off work for 24 hours and then return for another 24-hour shift the

next day. After completing five 24-hour shifts within a 10-day cycle, suppression personnel are off for 5 consecutive days. Bureau personnel provide other services, including arson investigation and public education. They work four 10-hour shifts per workweek. Suppression personnel work an average of 56 hours per workweek, and bureau personnel work an average of 40 hours per workweek.

Since 1985, in order to comply with § 55-160 allowing up to 15 "workdays" for military leave of absence, the fire department's policy allowed suppression personnel to receive a maximum of 360 hours of leave (15 days × 24 hours) per year and the bureau personnel to receive 150 hours of leave per year (15 days × 10 hours). In October 2000, the fire chief changed this policy. The new policy construes the term "workday" in § 55-160 to mean 1 calendar day, midnight to midnight, whereas the old policy considered a "workday" to be synonymous with one's work shift. The new policy reduced military leave of absence for suppression personnel to 180 hours per year (15 days × an average of 12 hours per day). The military leave of absence hours for bureau personnel remained the same.

In December 2000, Hall filed a petition against the City challenging the fire department's new policy. Hall alleged that the policy violated § 55-160. Hall further requested that the City be ordered to refrain from further violation of his statutory rights and that the City be ordered to reimburse Hall for the annual leave he expended as a result of the denial of the use of his military leave.

Evidence adduced at trial revealed that Hall expended 109 hours of annual leave or personal vacation time in military service, for which he otherwise would have been compensated under the old policy for paid military leave of absence. Additional testimony revealed that the military leave provision in the collective bargaining agreement had not been changed since the mid-1970's, but since that time, there have been three different military leave policies. The City argued that article 2, paragraph 10, of the agreement, which provides the City "[t]he right to adopt, modify, change, enforce, or discontinue any existing rules, regulations, procedures and policies which are not in direct conflict with any provision of the Agreement," allowed the City to change its policy regarding the state statute. As such, the City asserted that it

was free to interpret the term "workday" to mean a 24-hour calendar day, midnight to midnight.

In its order dated May 2, 2002, the district court agreed with the City that it had the right to change its policy as to compensation for military leave. The court also determined that the reduction from 360 hours to 180 hours did not violate § 55-160 or the collective bargaining agreement, as it fully paid the firefighters for up to 15 days per year.

## ASSIGNMENTS OF ERROR

Hall assigns that the district court erred in (1) concluding that the City's change in its interpretation of the term "workday" as contained in § 55-160 did not violate Hall's right to receive paid military leave for up to 15 workdays in any 1 calendar year and (2) considering the question of whether or not the fire chief had the unilateral right to change the City's policy with respect to military leave set forth in the collective bargaining agreement based on language contained in the agreement regarding management rights when Hall never made any allegation of a violation of the agreement in the pleadings.

## STANDARD OF REVIEW

Statutory interpretation presents a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Whipps Land & Cattle Co. v. Level 3 Communications*, 265 Neb. 472, 658 N.W.2d 258 (2003); *Hartman v. City of Grand Island*, 265 Neb. 433, 657 N.W.2d 641 (2003).

## ANALYSIS

On appeal, Hall argues that the term "workday," for purposes of military leave, equates to an employee's work shift. Hall further argues that as such, he is entitled to 360 hours (15 days × 24 hours) of military leave in any calendar year. The pertinent provisions of the military leave statute at issue provide that "[a]ll employees . . . *shall* be entitled to leave of absence from their respective duties, *without loss of pay*, on all days during which they are employed . . . not to exceed fifteen *workdays* in any one calendar year." (Emphasis supplied.) § 55-160.

In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Operating Engrs. Local 571 v. City of Plattsmouth*, 265 Neb. 817, 660 N.W.2d 480 (2003); *First Data Corp. v. State*, 263 Neb. 344, 639 N.W.2d 898 (2002). From the language used in § 55-160, we found it to be clear that the Legislature intended that nonemergency military leave should result in no salary deduction for 15 working days. See *King v. School Dist. of Omaha*, 197 Neb. 303, 248 N.W.2d 752 (1976). Statutes which require that employees be granted military leaves of absence "without loss of pay" require the employer to provide the full amount of the employee's civilian compensation. Annot., 8 A.L.R.4th 704 (1981).

Since it is clear that military leave shall not result in loss of pay, we now are asked to determine the length of time that military leave is allowed without loss of pay. Nebraska's statute provides paid leave without loss of pay in terms of workdays whereas the majority of statutes provide leave in terms of days. See State Individual Employment Rights Laws (Emp. Law Prof. Series, Sharon Shipley ed., CCH 2002). The term "workday" is defined as follows: the part of a day during which work is done; the number of hours constituting the required day's work for the regular wage or salary. Webster's New World College Dictionary 1539 (3d ed. 1996). The term "day" is defined as any 24-hour period—the period between the rising and setting of the sun—and any specified time period, especially as distinguished from other periods. Black's Law Dictionary 402 (7th ed. 1999). Given these assorted definitions, the term "workday" can be construed differently. As an aid to statutory interpretation, appellate courts must look to a statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Zavala v. ConAgra Beef Co.*, 265 Neb. 188, 655 N.W.2d 692 (2003). The main policy behind giving reservists paid leave is to encourage voluntary participation and thereby maintain a trained and ready national military force. *Reed v. City of Tulsa*, 569 P.2d 451 (Okla. 1977). Behind military leave statutes is the basic principle that a person who serves in the armed forces should not be

penalized for that service in civilian life. *Howe v. City of St. Cloud*, 515 N.W.2d 77 (Minn. App. 1994). Military leave provisions are construed broadly to give effect to this purpose. *Id.*

In order to best promote military service and to afford the greatest percentage of employees paid military leave without loss of pay, we define the term "workday," for purposes of military leave, to mean any 24-hour period in which work is done. Any other construction would penalize an employee for working a shift which overlaps the midnight hour and thus may discourage military service. To construe the term "workday," as the district court did in this case, to mean the 24-hour period from midnight to midnight thwarts the clear intent of the Legislature. The court's interpretation penalizes the firefighters, not for working 24-hour shifts, but, rather, for having the shift extend over the midnight hour. If a firefighter worked from midnight to midnight, he or she would be allowed 360 hours of military pay (15 days × 24 hours) under the court's interpretation. Another firefighter whose shift overlapped the midnight hour would be limited to just 180 hours of military leave (15 days × an average of 12 hours per day). The court's construction results in a loss of pay for some employees and, as such, violates the express terms of § 55-160 that the leave of absence be "without loss of pay."

The district court found that the City's old policy overpaid suppression personnel and was unfair to bureau personnel. The district court determined that the City's new policy in construing the term "workday" to mean any 24-hour period from midnight to midnight was a fairer policy for all firefighters. Yet, we do not find a requirement within § 55-160 that provides for the distribution of paid military leave to be fair. The statute requires only that employees shall be entitled to military leave without loss of pay. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. *Drake v. Drake*, 260 Neb. 530, 618 N.W.2d 650 (2000). To the extent policy issues are raised, they are better addressed through new legislation. Furthermore, we find that the district court's decision does not give any effect to the term "work." A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything

plain, direct, and unambiguous out of a statute. *Wilder v. Grant Cty. Sch. Dist. No. 0001*, 265 Neb. 742, 658 N.W.2d 923 (2003). The district court's construction equates workday to calendar day. The term "calendar day" is defined as a consecutive 24-hour day running from midnight to midnight. Black's Law Dictionary 402 (7th ed. 1999). Because equating workday to a calendar day effectively writes out the term "work," we refuse to adopt the district court's interpretation.

■ As previously mentioned, § 55-160 was recently amended. The Legislature is presumed to know language used in a statute, and if a subsequent act on the same or similar subject uses different terms in the same connection, the court must presume that a change in the law was intended. *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994). The amended statute allows employees to receive up to 120 hours of military leave each calendar year, which equates to 15 days at the common 8-hour workday. The term "workdays" has been eliminated. We refuse to construe the term "workday," prior to the statute's amendment, to mean the common 8-hour shift, because that construction does not presume a change in the law.

## CONCLUSION

We construe the term "workday" for purposes of military leave to mean any 24-hour period in which work is done. Because our construction differs from the district court's decision, we reverse the district court's order.

REVERSED.