582

590 S.E.2d 47

UNITED SERVICES AUTOMOBILE
ASSOCIATION, Respondent,

v.

Lesli LITCHFIELD and Vernon Litchfield, Appellants.

No. 3712.

Court of Appeals of South Carolina.

Heard Nov. 6, 2003.

Decided Dec. 15, 2003.

Rehearing Denied Feb. 19, 2004.

Carl H. Jacobson, of Charleston, for Appellants.

William O. Sweeny, III and William R. Calhoun, Jr., both of Columbia, for Respondent.

GOOLSBY, J.:

United Services Automobile Association ("USAA") brought this declaratory judgment action against Lesli Litchfield and Vernon Litchfield seeking a declaration that no basis exists for reforming Lesli Litchfield's automobile insurance policy to include underinsured motorist ("UIM") coverage. The trial

court granted USAA's motion for summary judgment. The Litchfields appeal, contending USAA failed to make a meaningful offer of UIM coverage. We affirm.

## FACTS

USAA sent Lesli Litchfield (then Lesli Tillman) an automobile insurance policy on July 9, 1997. USAA included an offer of UIM, using form 333SC(10), a form prescribed by the Chief Insurance Commissioner of South Carolina. This form listed each and every limit of UIM coverage that USAA had filed with and had been approved to sell by the South Carolina Department of Insurance, instructed Litchfield how to select UIM coverage if she wished it, and told her how she could later increase or decrease the limits of such coverage. The coversheet of the policy contained the following notice: "Important Notice! SC law requires us to add ... UIM to your policy in the same limits as your liability unless you sign the attached offer of optional ... UIM Form 333SC and return it to us within 30 days."

When Litchfield failed to respond, USAA issued her a policy on August 19, 1997, that included UIM coverage in the amount of her liability coverage. Six months later, Litchfield telephoned USAA and asked that it drop the UIM coverage from her policy.

USAA sent her a form annotated with the words "Rejection of UIM per phone conversation" written across the bottom and asked her to sign, date, and return it by mail. Litchfield did so, returning the form on February 2, 1998. USAA then prepared and sent to Litchfield an amended declaration that reflected the deletion of the UIM coverage and the prorated, decreased premium for the remainder of the policy period.

On October 5, 1999, while driving a rented automobile in Hawaii, Litchfield's husband was injured in a motor vehicle collision. Litchfield's husband then presented a claim for UIM benefits against her USAA policy because the damages he sustained allegedly exceed the $100,000.00 liability coverage of the at-fault driver.

USAA instituted this declaratory judgment action against the Litchfields, asserting Litchfield had effectively cancelled her UIM coverage. The latter counterclaimed, seeking to

have the policy reformed to include the UIM that Litchfield, almost two years previously, had specifically asked be deleted from her policy.

The trial court granted USAA summary judgment, finding the sole reason that Litchfield's policy did not contain UIM coverage at the time of the accident was because she had voluntarily elected to drop it. The Litchfields do not challenge this finding on appeal. The Litchfields claim that USAA did not make a valid offer of optional UIM coverage when she purchased her coverage.

## LAW/ANALYSIS

We do not view this as an "offer of UIM coverage" case.[1] We are beyond the point of having to decide whether USAA made a valid offer of UIM coverage to Litchfield. This is because Litchfield did in fact enjoy such coverage and in an amount up to the limits of her liability coverage; however, she later, on her own initiative, voluntarily decided to drop it. Because Litchfield once had UIM coverage and later changed the policy by dropping the UIM coverage from her policy, USAA was under no obligation to make another offer of UIM coverage.[2] Moreover, we agree with the trial court that "[i]t would make no sense ... for an insurer to be required to 'offer' a given coverage to an insured who had contacted the insurance company for the specific purpose of dropping that coverage."

---

1. Because we do not consider this an "offer" case, we do not reach the issue of whether the offer made by USAA to Litchfield was valid to begin with. *Cf.*, however, *Norwood v. Allstate Ins. Co.*, 327 S.C. 503, 506–507, 489 S.E.2d 661, 663 (Ct.App.1997) (holding an automobile insurer made a valid offer of UIM coverage under a policy with liability limits of 25/50/25 where insured offered UIM coverage of 15/30/5, 15/30/10, and 25/50/10, and offer form indicated insured could purchase UIM coverage "up to" her liability limits and instructed her how to increase or decrease her limits of UIM coverage); *cf. also* S.C.Code Ann. § 38–73–470 (Supp.2002) ("There is no requirement for an insurer or an agent to offer underinsured motorist coverage at limits less than the statutorily required bodily injury or property damage limits.").

2. *See* S.C.Code Ann. § 38–77–350(c) (2002) ("An automobile insurer is not required to make a new offer of coverage on any automobile insurance policy which renews, extends, changes, supersedes, or replaces an existing policy.").

Indeed, if Litchfield were allowed to prevail in this instance, then anyone whose policy currently includes UIM coverage in an amount less than his or her liability coverage would be able to question later the sufficiency of the offer of UIM coverage and seek to have the policy reformed in an attempt to increase the limits thereof. The opportunity for fraud would be enormous.

**AFFIRMED.**

STILWELL, J., concurs. HUFF, J., dissents in a separate opinion.

HUFF, J. (dissenting):

I respectfully dissent. I disagree with the majority's conclusion affirming the trial court's decision. The trial court granted USAA's motion for summary judgment. The Litchfields appeal. I believe the main issue on appeal concerns whether USAA made a valid offer of UIM coverage. I would hold that USAA did not make a valid offer and reverse the trial court's ruling.

## FACTUAL/PROCEDURAL BACKGROUND

In light of the fact that a determination as to the existence of a valid offer is critical to this case I find it necessary to provide a separate factual statement. In July 1997, USAA issued an automobile insurance policy to Lesli Litchfield, then known as Lesli Tillman, effective July 10, 1997 through January 10, 1998. The policy did not include UIM coverage. The automobile policy packet sent to Litchfield did, however, include an offer of UIM coverage. The offer provided, in pertinent part:

> Your automobile insurance policy does not provide any underinsured motorists coverage. You have, however, a right to buy underinsured motorists coverage in limits up to the limits of liability coverage you carry under your automobile insurance policy. Limits of underinsured motorists coverage, together with the additional premiums you will be charged are shown upon this Form.

The policy coversheet and the UIM offer both indicated that, if the offer form was not completed and returned within thirty

days, UIM coverage would automatically be added to the policy at the same limits as Litchfield's liability limits, as required by law.

The offer form gave the option of purchasing or rejecting UIM coverage, and listed ten levels of bodily injury limits ranging from $15,000/$30,000 to $1,000,000/$1,000,000 and seven levels of property damage limits ranging from $5,000 to $500,000. To select the desired levels of coverage the applicant had to check the boxes next to the appropriate limits. The parties do not dispute that USAA's offer form listed every limit of UIM coverage USAA is authorized by the South Carolina Department of Insurance to sell.

Litchfield did not respond to the initial offer of UIM coverage, so on August 19, 1997 USAA automatically added the coverage to her policy, effective July 10, 1997. On January 26, 1998, Litchfield telephoned USAA and asked that the UIM coverage be dropped from her policy. USAA informed Litchfield that, to properly document her request, it needed to have a statement in writing. USAA sent Litchfield a standard form offer of underinsured motorist coverage with the handwritten annotation "Rejection of UIM per phone conversation." Litchfield promptly executed the form declining coverage and mailed it back to USAA. Shortly thereafter, USAA prepared and sent Litchfield an Amended Declaration, reflecting the deletion of the UIM coverage.

On October 5, 1999, Litchfield's husband, Vernon Litchfield, was seriously injured in an automobile collision in Hawaii. The liability carrier for the at-fault vehicle tendered its limits of liability coverage. Mr. Litchfield subsequently presented a claim for UIM benefits against his wife's USAA policy, asserting the policy should be reformed to include $50,000 in UIM coverage because USAA failed to make a meaningful offer of UIM coverage.

USAA denied there was any UIM coverage, asserting that Lesli Litchfield had changed her policy to delete UIM coverage and USAA was not required to make any further UIM offers following the change. The Litchfields sought reformation of the policy to include UIM coverage on the grounds that USAA failed to make a meaningful offer of UIM coverage.

The trial court granted summary judgment to USAA finding that the sole reason the policy did not provide UIM coverage at the time of the accident was that Litchfield voluntarily elected to drop it, and USAA was not required to offer Litchfield that same coverage when she telephoned them requesting that UIM coverage be deleted. The court further found that the form offering UIM coverage sent to Litchfield in July 1997, when her policy was initially issued, complied with South Carolina law such that the offer was meaningful and effective.

## LAW/ANALYSIS

The Litchfields assert that USAA's offer of UIM coverage was not a meaningful offer under South Carolina law, and because no meaningful offer was made to Mrs. Litchfield, it is irrelevant that she rejected the UIM coverage.[3] I agree.

In finding USAA was not required to offer Mrs. Litchfield UIM coverage after she elected to drop the coverage, the trial court relied on § 38–77–350(C) of the South Carolina Code, governing the offer of optional coverages. This section provides, "An automobile insurer is not required to make a new offer of coverage on any automobile insurance policy which renews, extends, changes, supercedes, or replaces an existing policy." S.C.Code Ann. § 38–77–350(C) (2002). It is clear, however, that this subsection envisions that an effective past offer has already been made. *See Antley v. Nobel Ins. Co.*, 350 S.C. 621, 635, 567 S.E.2d 872, 879–80 (Ct.App.2002) (while an insurer is not required to make a new offer of optional coverage where the policy renews an existing policy, the insurer still bears the burden of demonstrating a meaningful offer of the optional coverage was made at some point in the past); *McDonald v. S.C. Farm Bureau Ins. Co.*, 336 S.C. 120, 125, 518 S.E.2d 624, 626 (Ct.App.1999) ("Where Section 38–77–

---

3. USAA asserts the Litchfields failed to address the trial court's finding "that the sole reason that [Mrs. Litchfield's] policy did not provide coverage at the time of the accident was that she had voluntarily elected to drop it." It therefore contends the Litchfields have abandoned this issue. However, after review of the Litchfields' brief, I find they have sufficiently challenged this ruling by maintaining that Mrs. Litchfield's rejection or deletion of the UIM coverage is irrelevant because there was no meaningful offer made by USAA in the first instance.

350(C) states the insured is not required to make a 'new' offer, it clearly envisions the circumstances where the insurer has already made an 'old' offer."); *Ackerman v. Travelers Indem. Co.*, 318 S.C. 137, 142, 456 S.E.2d 408, 411 (Ct.App.1995) ("[T]he only reasonable way to interpret the language in § 38–77–350(C) is to recognize that the insurer may rely on the **effective** past offers it has given to its insureds when these insureds continue coverage with the same insurer.") (emphasis added).

We thus turn to the question of whether USAA made a meaningful offer to Litchfield in the past. The Litchfields argue USAA's offer did not comply with the requirements of S.C.Code Ann. § 38–77–160 (2002) and pertinent South Carolina case law. We agree.

Section 38–77–160 requires automobile insurance carriers to offer, at the option of the insured, UIM coverage "up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist." S.C.Code Ann. § 38–77–160 (2002). This statute has been construed to mandate that the insured "be provided with adequate information, and in such a manner, as to allow the insured to make an intelligent decision of whether to accept or reject the coverage." *Burch v. S.C. Farm Bureau Mut. Ins. Co.*, 351 S.C. 342, 345, 569 S.E.2d 400, 402 (Ct.App.2002) (quoting *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987)). Specifically, our courts have interpreted this section as requiring insurers to offer UIM coverage to the insured **in any amount** up to the insured's liability coverage. *Id.* at 345, 569 S.E.2d at 402.

To determine whether an insurer has complied with its duty to offer optional coverages and thus make a meaningful offer of UIM coverage, the court must consider the following factors: (1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that

optional coverages are available for an additional premium. *Wannamaker*, 291 S.C. at 521, 354 S.E.2d at 556.

The insurer bears the burden of establishing it presented a meaningful offer of UIM coverage. *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 405, 475 S.E.2d 758, 759 (1996). If the insurer fails to make a meaningful offer of UIM coverage, the court will reform the insured's policy to include UIM coverage up to the limits of the insured's liability coverage. *Dewart v. State Farm Mut. Auto. Ins. Co.*, 296 S.C. 150, 153, 370 S.E.2d 915, 916 (Ct.App.1988). A noncomplying offer has the legal effect of no offer at all. *Hanover Ins. Co. v. Horace Mann Ins. Co.*, 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990).

USAA claims its offer of UIM coverage satisfied the requirements for a meaningful offer because its form listed every level of coverage the company was authorized by the South Carolina Department of Insurance to sell. I disagree.

In *Bower v. National General Insurance Co.*, our supreme court ruled that an offer of UIM coverage must inform the insured "that **any** limits up to the liability limits could be purchased." 351 S.C. 112, 119, 569 S.E.2d 313, 316 (2002) (emphasis in original). In that case, the insurer's offer form stated, in language virtually identical to the language in USAA's form, that the insured had the "right to buy underinsured motorist coverage in limits up to the limits of liability coverage you will carry under your automobile insurance policy." The form further provided, "The limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form." *Id.* at 114–15, 569 S.E.2d at 314. The form listed four bodily injury limits and four property damage limits with the applicable premiums. *Id.* at 115, 569 S.E.2d at 314. The form then included blank spaces to fill in requested UIM bodily injury limits and UIM property damage limits. *Id.* The supreme court concluded, because the language of National General's form failed to inform the insured that UIM coverage **in any amount** up to the insured's liability coverage could be purchased, the offer could not be considered meaningful. *Id.* at 119, 569 S.E.2d at 316. Though the form did not explicitly state that "all" of the available limits of UIM coverage were listed, the court found that a reasonable person would con-

clude that the options listed were the only ones available. *Id.* at 118, 569 S.E.2d at 316.

As in *Bower*, the offer of UIM coverage in the instant case did not inform Litchfield of her right to purchase the coverage **in any amount** up to the limits of her liability coverage. The supreme court in *Bower* clearly held that the offer must "inform an insured that 'underinsured motorist coverage **in any amount** up to the insured's liability coverage' is what is actually being offered." *Id.* at 119, 569 S.E.2d at 316 (emphasis in original). USAA's form failed to provide this explicit information to the insured, listing only the fixed levels of coverage it had obtained authorization from the Department of Insurance to sell.

USAA argues *Bower* is distinguishable because, unlike USAA's offer, the UIM coverage offer at issue in *Bower* only listed examples of the levels of coverage, not all of the limits the insurer was authorized to sell. We find a careful reading of *Bower* shows no distinction between the two cases, as *Bower* specifically relied on this court's decision in *Wilkes v. Freeman*, 334 S.C. 206, 512 S.E.2d 530 (Ct.App.1999). In *Wilkes*, this court found a meaningful offer of UIM coverage was not made where, as in the present case, the offer form listed **all** of the limits the insurer was authorized to sell. The offer of UIM coverage in *Wilkes* stated that "[a]ll of the limits of underinsured motor vehicle coverage we sell, together with the additional premiums you will be charged, are shown on this form." *Id.* at 210, 512 S.E.2d at 532 (emphasis in original). Although the insurer's offer form listed all the limits of UIM coverage the insurer sold, the court found that the form failed "to provide any indication that applicants may request other coverage amounts." *Id.* Because the insurer failed to provide the insured an opportunity to request UIM coverage at alternate coverage amounts, the insurer failed to "offer UIM coverage 'up to' the limits of [the insured's] liability coverage." *Id.* at 212, 512 S.E.2d at 533.[4]

---

4. It should further be noted that, unlike the form in this case, the form in *Bower* included a blank space for the insured to specify the exact limits the insured desired. The *Bower* dissent partially relied upon this distinction in maintaining that a meaningful offer of UIM coverage was made. *Bower*, 351 S.C. at 121, 569 S.E.2d at 317.

I am mindful that, by explicitly listing each level of UIM coverage it was authorized to sell, USAA was likely attempting to make the insured's choice of UIM coverage limits easier rather than more difficult to understand. I am constrained, however, by recent precedent which requires that an offer of UIM coverage clearly inform the insured that UIM coverage may be purchased **in any amount** up to the limits of liability coverage. No exception has been carved out for cases such as the present, in which the offer lists every limit of UIM coverage the insurer is legally authorized to sell. As noted above, our courts declined to provide for such an exception when those circumstances arose in the *Wilkes* case.

Based on the standing case law, I would hold USAA's offer of UIM coverage did not sufficiently inform Mrs. Litchfield of her right to purchase UIM coverage in any amount, and I am thus compelled to rule the offer was not meaningful. I would reverse the trial court's order granting summary judgment and remand the case with the instruction that Mrs. Litchfield's USAA policy be reformed to include UIM coverage at the appropriate limits.