677 S.E.2d 606

**James C. BLACKBURN, Respondent,**

v.

**DAUFUSKIE ISLAND FIRE DISTRICT, Appellant.**

No. 26656.

Supreme Court of South Carolina.

Heard March 18, 2009.

Decided May 26, 2009.

Rehearing Denied June 24, 2009.

Caroline W. Cleveland, of Cleveland Law, LLC, of Charleston, for Appellant.

James B. Richardson, Jr., of Columbia, for Respondent.

Adelaide S. Andrews, of Charleston, for Amicus Curiae City of Charleston.

Jeffrey A. Lehrer, of Ford & Harrison, of Spartanburg, for Amicus Curiae City of Spartanburg.

Shahin Vafai and Linda Pearce Edwards, both of Gignilliat, Savitz & Bettis, of Columbia, for Amicus Curiae Municipal Association of South Carolina.

W.A. Nickles, III, of Gergel Nickles & Solomon, of Columbia, for Amicus Curiae City of Columbia.

Justice WALLER:

In this declaratory judgment action, appellant Daufuskie Island Fire District directly appeals from the Master-in-Equity's decision that under the emergency leave portion of the South Carolina military leave statute, "thirty days" means thirty work days, as opposed to thirty calendar days. We affirm.

## FACTS[1]

Appellant is a Special Purpose Tax District within Beaufort County which provides fire protection services to the residents of Daufuskie Island. Appellant employed respondent, James C. Blackburn, as a firefighter from July 2002 until his resignation in December 2005. Respondent's normal work schedule as a firefighter consisted of 24–hours on duty, followed by 48–hours off duty ("24/48"). Respondent's 24–hour working period would begin at 8:15 a.m. on one calendar day, and conclude at 8:15 a.m. the following day. Generally, respondent worked ten 24–hour shifts per month.

Respondent was compensated every two weeks, for a total of 26 times per year. The 24/48 schedule meant that respondent would work 120 hours for two pay periods in a row, and then 96 hours for the next consecutive pay period. Nonetheless, appellant's pay practices provided for uniform payments every two weeks equivalent to pay for 112 hours, i.e., the average hours worked over the course of three pay periods.[2]

In addition to being a firefighter, respondent is a sergeant in the United States Air Force Reserve. While employed by appellant, respondent had a number of work absences due to his military duties. Some of these military absences were for annual training, i.e., regular military leave, but others were for tours of active duty, considered emergency leave.

Respondent filed a declaratory action seeking a determination that under the South Carolina military leave statute, he was entitled to be paid for 30 work days of emergency military leave. The parties filed cross-motions for summary judgment, and the Master found in respondent's favor. Specifically, the Master ruled that under S.C.Code Ann. § 8–7–90, respondent was entitled to 30 work days of emergency leave, and the measure of respondent's work day was "his usual 24–hour shift."[3]

---

1. The parties entered into a stipulation of facts.

2. Respondent was paid by the hour.

3. The Master also found that for regular military leave, respondent was entitled to payment for 15 work days. The only issue on appeal,

## ISSUE

Did the Master err in ruling that the "thirty additional days" of emergency leave provided under S.C.Code Ann. § 8–7–90 refers to 30 work days as opposed to 30 calendar days?

## DISCUSSION

█ Appellant argues the Master erred in interpreting the emergency leave provision of section 8–7–90. Appellant contends that for this portion of the statute, the phrase "thirty additional days" means thirty calendar days. We disagree.

█ The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *E.g., Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Moreover, "[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Sloan v. Hardee,* 371 S.C. 495, 499, 640 S.E.2d 457, 459 (2007).

The statute regarding public employees' payment for military leave has evolved over the years. Prior to a 1990 amendment, section 8–7–90 read as follows:

All officers and employees of this State or a political subdivision of this State who are either enlisted or commissioned members of the South Carolina National Guard, the United States Naval Reserve, the Officers Reserve Corps, or the Enlisted Reserve Corps, the Reserve Corps of the Marines, the Coast Guard Reserve and the United States Air Force Reserve shall be entitled to leave of absence from their respective duties without loss of pay, time, or efficiency rating **for a period not exceeding fifteen days** in any one year during which they may be engaged in training or other such duties ordered by the Governor, the War Department, the Treasury Department, the Navy Department, or the Air Force Department. **In the event any such person is called upon to serve during an emergency he shall be**

however, is with respect to the emergency leave provision under § 8–7–90.

> entitled to such leave of absence for not exceeding thirty additional days.

S.C.Code Ann. § 8–7–90 (1986) (emphasis added).

The current version, which reflects the 1990 amendment, provides as follows:

> All officers and employees of this State or a political subdivision of this State who are either enlisted or commissioned members of the South Carolina National Guard, the United States Army Reserve, the United States Air Force Reserve, the United States Naval Reserve, the United States Marine Corps Reserve, or the United States Coast Guard Reserve are entitled to leaves of absence from their respective duties without loss of pay, time, or efficiency rating **for one or more periods not exceeding an aggregate of fifteen regularly scheduled work days** in any one year during which they may engage in training or any other duties ordered by the Governor, the Department of Defense, the Department of the Army, the Department of the Air Force, the Department of the Navy, the Department of the Treasury, or any other department or agency of the government of the United States having authority to issue lawful orders requiring military service. **Saturdays, Sundays, and state holidays may not be included in the fifteen-day aggregate unless the particular Saturday, Sunday, or holiday to be included is a regularly scheduled work day for the officer or employee involved. In the event any such person is called upon to serve during an emergency he is entitled to such leave of absence for not exceeding thirty additional days.**

> As used in this section, 'in any one year' means either a calendar year or, in the case of members required to perform active duty for training or other duties within or on a fiscal year basis, the fiscal year of the National Guard or reserve component issuing the orders.

> **The provisions of this section must be construed liberally** to encourage and allow full participation in all aspects of the National Guard and reserve programs of the armed forces of the United States and to allow state officers and employees who are enlisted or commissioned members of

the National Guard or reserve components to excel in military and emergency preparedness and service by taking full advantage of all career-enhancing assignments and training opportunities.

S.C.Code Ann. § 8–7–90 (Supp.2008) (emphasis added).[4]

Thus, before 1990, the language of the statute simply stated that employees were entitled to a leave of absence "for **a period not exceeding fifteen days** in any one year." § 8–7–90 (1986) (emphasis added). Significantly, the 1990 amendment made the following changes: (1) modified the above phrase to "for one or more periods not exceeding an aggregate of **fifteen regularly scheduled work days;**" (2) added the sentence specifying that weekends and holidays are **not** to be included in the 15–day aggregate (unless these days are "regularly scheduled work" days); and (3) added express language that the statute is to be construed liberally to encourage and allow full participation in all aspects of the military reserves. The 1990 amendment did not fundamentally change the sentence concerning "emergency" leave.

Appellant maintains that because the Legislature only changed "days" to "work days" in the sentences expressly relating to the aggregate 15–day "regular" training period, the word "days" in the emergency leave sentence does not mean work days, but instead means calendar days. In our opinion, however, a plain, unforced reading of the statute actually points to the opposite conclusion. *See Sloan v. Hardee, supra.*

The first sentence of the statute speaks of an employee's entitlement to military "leaves of absences." While that sentence goes on to discuss "regular" leaves of absences, the final

---

4. Due to a 2008 amendment, a new version of the statute will take effect July 1, 2009. The new version provides for yet another 30 days of military leave if the employee is serving **active duty in a combat zone.** The 2008 amendment adds the following paragraph, to be located after the first paragraph of the statute:

A state employee in a full time position who serves on active duty in a combat zone and who has exhausted all available leave for military purposes is entitled to receive up to thirty additional days of military leave in any one year.

§ 8–7–90 (Supp.2008).

sentence of the first paragraph refers to emergency leave, and then states that an employee is "entitled to **such leave** of absence for not exceeding thirty **additional** days." § 8–7–90 (Supp.2008) (emphasis added). The phrase, "such leave," plainly means the type of leave the statute has already discussed earlier in the **same** paragraph; namely, a military leave of absence based upon regularly scheduled work days.[5]

Appellant also contends that the majority of state jurisdictions facing this issue have found that the word "days" in the military leave statute refers to "calendar days." As pointed out by the Master, however, these authorities weigh in favor of respondent's position because those state statutes use the unmodified "days," whereas South Carolina's statute speaks in terms of "work days." *See, e.g., Koppin v. Strode,* 761 N.E.2d 455 (Ind.Ct.App.2002) (rejecting firefighters' argument that a day should be based on a 24–hour shift, and instead interpreting 15 days in the military leave statute as 15 eight-hour days); *Painters and Allied Trades Local Union 246 v. City of Des Moines,* 451 N.W.2d 825, 826 (Iowa 1990) (holding that statute which allows municipal employees a leave of absence for military service "without loss of pay during the first thirty days of such leave of absence" meant calendar days, not working days); *Glass v. City of Lynn,* 49 Mass.App.Ct. 352, 729 N.E.2d 1136 (2000) (rejecting police officer's claim that statute entitling paid military leave for 17 "days" did not allow compensation for seventeen **work** days); *Smith v. School Dist. No. 1,* 34 Or.App. 425, 578 P.2d 820 (1978) (holding that the state statute entitling public employees to paid military leave for "a period not exceeding 15 days" meant no more than 15 consecutive calendar days).

In contrast, those jurisdictions where the statute expressly defines military leave by work days have interpreted firefight-

---

**5.** The Master's well-reasoned order aptly explained this point as follows:

The only sensible meaning of "additional" here is more of the same kind. The unit of leave is the employee's regularly scheduled work day, the same for regular training leave as for active duty leave. If the general assembly had meant to change the unit of measurement for emergency leave, surely it would have said so.

ers' claims just as the Master did in this case. For example, Nebraska's statute expressly allows for paid military leave for up to 15 "workdays" in any one calendar year. In *Hall v. City of Omaha,* 266 Neb. 127, 663 N.W.2d 97 (2003), the Nebraska Supreme Court found that a firefighter's workday is equivalent to his 24–hour shift. The court explained its reasoning as follows:

> In order to best promote military service and to afford the greatest percentage of employees paid military leave without loss of pay, we define the term "workday," for purposes of military leave, to mean any 24–hour period in which work is done. Any other construction would penalize an employee for working a shift which overlaps the midnight hour and thus may discourage military service. To construe the term "workday," as the district court did in this case, to mean the 24–hour period from midnight to midnight thwarts the clear intent of the Legislature. The court's interpretation penalizes the firefighters, not for working 24–hour shifts, but, rather, for having the shift extend over the midnight hour.

*Id.* at 101. The Minnesota Court of Appeals has also interpreted its military leave statute as compensating firefighters for 24–hour shifts. *See Howe v. City of St. Cloud,* 515 N.W.2d 77 (Minn.Ct.App.1994) (holding that where the state statute entitles public employees to 15 days of paid military leave, a day should be defined as a 24–hour day because the firefighters' shifts missed while on military leave were each 24 hours long).

Given the Legislature's mandate that § 8–7–90 be construed liberally, we believe that the term "days" as used in the emergency leave provision means "work days," and therefore, we affirm the Master's holding below.

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.