698 S.E.2d 866

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Respondent,**

v.

**Eugene John DRAINE, Appellant.**

**No. 4726.**

Court of Appeals of South Carolina.

Heard May 19, 2010.

Decided Aug. 11, 2010.

588

Robert B. Ransom, of Columbia, for Appellant.

Bonum S. Wilson, III, of Charleston, for Respondent.

GEATHERS, J.

In this appeal, Eugene Draine argues that the circuit court erred by refusing to reform his automobile insurance policy with the Government Employees Insurance Company (GEICO) to provide for underinsured motorist (UIM) coverage in an amount equal to his liability coverage. Specifically, Draine contends that section 38–77–350(E) of the South Carolina Code (2002) required GEICO to add UIM coverage to his policy when, in renewing his policy, he failed to return an executed UIM offer form within thirty days after receiving it from GEICO. We affirm.

## FACTS/PROCEDURAL HISTORY

The facts in this case are undisputed. Sometime in early 2003, Draine decided to switch his automobile insurance coverage from Farm Bureau Insurance to GEICO. In March 2003, GEICO sent Draine the documentation necessary to add him as a policyholder. Included therein was a form offering UIM coverage. On March 20, 2003, Draine completed the UIM offer form, rejecting all UIM coverage. The parties have stipulated that this March 2003 offer and rejection of UIM coverage complied with all aspects of South Carolina law.

Upon receipt of the completed UIM offer form and the required premium, GEICO issued an automobile insurance policy to Draine that did not include UIM coverage. In 2004, Draine's policy was renewed and, as before, it did not include UIM coverage.[1]

---

1. The record is unclear as to whether Draine was offered UIM coverage when he renewed his policy in 2004.

On January 26, 2005, GEICO sent Draine materials so that his policy could again be renewed. Included in the documents that GEICO provided to Draine was a UIM offer form. Like the 2003 offer form, the 2005 offer form contained the following two provisions:

1. **IF YOU ARE A NEW APPLICANT AND DO NOT SIGN AND RETURN THIS FORM,** we will include Uninsured Motorist and Underinsured Motorist limits equal to your Bodily Injury and Property Damage Liability limits. This may result in a change to your premium.

2. **IF YOU ARE A CURRENT SOUTH CAROLINA POLICYHOLDER,** you must complete, sign and return this form only if you want to make changes to your policy.

Draine did not complete the offer form or return it to GEICO. Instead, Draine delivered to GEICO a check for the premium necessary to renew his existing policy, which included $25,000 in liability coverage but no UIM coverage.

GEICO subsequently renewed Draine's policy. The dates of coverage provided by the renewed policy were March 11, 2005 through September 11, 2005.

On March 13, 2005, Draine was involved in an automobile accident caused by another driver. As a result of the accident, Draine incurred damages in excess of the other driver's liability insurance coverage. After settling his claim against the driver, in exchange for a covenant not to execute, Draine submitted a claim to GEICO for UIM benefits. GEICO declined to pay the claim on the ground that Draine's policy did not include UIM coverage.

Thereafter, GEICO filed a declaratory judgment action seeking a judicial determination that Draine was not entitled to UIM benefits. Draine answered and counterclaimed, arguing that his policy should be reformed to include $25,000 in UIM coverage. Draine contended that such relief was appropriate under section 38–77–350(E) of the South Carolina Code (2002) because GEICO's 2005 renewal materials included a UIM offer form, which he had not returned.

The case proceeded to a non-jury trial before the circuit court, where it was tried on stipulated facts, exhibits, and the

arguments of counsel. In an order filed July 2, 2008, the circuit court granted judgment in favor of GEICO, concluding that reformation of Draine's policy was not warranted. Specifically, the circuit court found that "a common sense reading" of section 38–77–350 demonstrated that the legislature intended to restrict subsection (E) of that statute to "new applicants." Additionally, the circuit court found that reformation of Draine's policy was not warranted under contract law because (1) Draine never intended to change his policy to add UIM coverage and (2) Draine was sophisticated with regard to such matters and thus could not have been confused by the 2005 UIM offer form. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err by holding that section 38–77–350(E) of the South Carolina Code (2002) did not mandate the reformation of Draine's automobile insurance policy to include $25,000 in UIM coverage?

## STANDARD OF REVIEW

■ "When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." *J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.*, 336 S.C. 162, 166, 519 S.E.2d 561, 563 (1999). "In such cases, the appellate court owes no particular deference to the trial court's legal conclusions." *Id.*

## LAW/ANALYSIS

Automobile insurance carriers like GEICO are required to offer "at the option of the insured" UIM coverage up to the limits of the insured's liability coverage. S.C.Code Ann. § 38–77–160 (2002). Section 38–77–350 of the South Carolina Code (2002 & Supp.2009) sets forth specific requirements regarding the offering of optional coverages, such as UIM coverage.

■ In the present case, Draine contends that, under section 38–77–350(E), GEICO was required to add UIM coverage to his policy when he failed to return the UIM offer form that

he received as part of GEICO's 2005 renewal materials. We disagree.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Blackburn v. Daufuskie Island Fire Dist.*, 382 S.C. 626, 629, 677 S.E.2d 606, 607 (2009). In ascertaining legislative intent, "a court should not focus on any single section or provision but should consider the language of the statute as a whole." *Mid–State Auto Auction of Lexington, Inc. v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). "A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *State v. Sweat,* 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) (quoting *Browning v. Hartvigsen,* 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992)).

The statute in question here, section 38–77–350, reads as follows:

(A) The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages *required to be offered pursuant to law* to applicants for automobile insurance policies. This form must be used by insurers for *all new applicants.* The form, at a minimum, must provide for each optional coverage required to be offered: [the required contents of the form are omitted for brevity].

(B) If *this form* is signed by the named insured, after it has been completed by an insurance producer or a representative of the insurer, it is conclusively presumed that there was an informed, knowing selection of coverage *and neither the insurance company nor an insurance agent is liable to the named insured or another insured under the policy for the insured's failure to purchase optional coverage or higher limits.*

(C) An automobile insurer *is not required* to make a new offer of coverage on any automobile insurance policy which *renews,* extends, changes, supersedes, or replaces *an existing policy.*

(D) Compliance with this section satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and *no person, including, but not limited to,*

*an insurer and insurance agent is liable in an action for damages on account of the selection or rejection made by the named insured.*

(E) *If the insured fails or refuses to return an executed offer form within thirty days to the insurer, the insurer shall add on uninsured motorist and underinsured motorist coverages with the same policy limits as the insured's liability limits.*

S.C.Code Ann. § 38–77–350 (2002 & Supp.2009) (emphases added).

█ Under section 38–77–350(E), an insurer is required to add UIM coverage to an insured's policy when "the insured fails or refuses to return an executed offer form within thirty days to the insurer." S.C.Code Ann. § 38–77–350(E) (2002). Here, it is undisputed that Draine timely returned an executed offer form rejecting UIM coverage when he initially became insured with GEICO in 2003. Although Draine did not return the 2005 UIM offer form he received when renewing his policy, section 38–77–350(E) does not expressly require an insured to return an executed offer form every time one is provided in order to avoid the addition of UIM coverage. Rather, it merely provides that "an executed offer form" must be returned "within thirty days." [2]

Draine nonetheless contends that if an insurer provides an existing insured with a UIM offer form when the insured renews his coverage, the insurer must add optional UIM coverage if the insured does not timely return the form, even if the insured had previously rejected UIM coverage. We disagree. In our view, reading section 38–77–350 as a whole leads to the conclusion that GEICO was not required to add UIM coverage to Draine's policy when Draine failed to return

---

**2.** While section 38–77–350(E) does not specify the event that triggers the commencement of the thirty-day time period, it is reasonable to presume that the legislature intended for the triggering event to be an event mentioned in the statute. *See S. Mut. Church Ins. Co. v. S.C. Windstorm & Hail Underwriting Ass'n,* 306 S.C. 339, 342, 412 S.E.2d 377, 379 (1991) ("[W]ords in a statute must be construed in context."). For reasons discussed herein, we conclude that section 38–77–350(E)'s thirty-day time period is triggered by the provision of offer forms to "new applicants" as set forth in section 38–77–350(A), rather than by the provision of offer forms to existing policyholders—an event not contemplated by the statute.

the UIM offer form he received when he renewed his policy in 2005. Moreover, we find that such an interpretation is consistent with the purpose and design of section 38–77–350.

## A. Subsections (A) and (C) of Section 38–77–350

The underlying premise of Draine's argument in this case is that the term "form" in subsection (E) of section 38–77–350 includes UIM offer forms that are provided to insureds who are renewing their existing policies. However, when that subsection is read in conjunction with subsections (A) and (C) of section 38–77–350, it becomes apparent that Draine's premise is flawed.

Section 38–77–350(A), which sets forth the basic requirements for the UIM offer form, provides guidance as to what the legislature meant when it used the word "form" in section 38–77–350(E). *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning."); *Busby v. State Farm Mut. Auto. Ins. Co.*, 280 S.C. 330, 333, 312 S.E.2d 716, 718 (Ct.App.1984) ("Where the same word is used more than once in a statute it is presumed to have the same meaning throughout unless a different meaning is necessary to avoid an absurd result."). Importantly, section 38–77–350(A) states that the offer form must be used for "new applicants." S.C.Code Ann. § 38–77–350(A) (Supp.2009). Additionally, it provides that the form must be used "in offering optional coverages *required to be offered pursuant to law.*" *Id.* (emphasis added).

In the present case, Draine was not a "new applicant" when GEICO sent him a UIM offer form in 2005. In the context of UIM cases, this court has construed the term "new applicant" as meaning "those who ... never had an opportunity to reject UIM coverage." *See McDonald v. S.C. Farm Bureau Ins. Co.*, 336 S.C. 120, 124, 518 S.E.2d 624, 626 (Ct.App.1999). Here, at the time that Draine initially became a GEICO policyholder in 2003, he was properly offered UIM coverage, which he rejected. Therefore, when Draine sought to renew his existing policy in 2005, he did not constitute a "new applicant" as contemplated by section 38–77–350(A).

Moreover, as Draine concedes, UIM coverage was not "required to be offered pursuant to law" when he renewed his policy in 2005. Section 38–77–350(C) expressly provides that "[a]n automobile insurer *is not required* to make a new offer of coverage on any automobile insurance policy which *renews,* extends, changes, supersedes, or replaces an existing policy." S.C.Code Ann. § 38–77–350(C) (2002) (emphases added). Although this court has held that section 38–77–350(C) is inapplicable when the insurer has not made a previous effective offer of optional coverage,[3] in this case, it is undisputed that GEICO's 2003 offer of UIM coverage was effective. Accordingly, GEICO was not required to offer UIM coverage to Draine when he renewed his policy in 2005. *See* Burnet R. Maybank, III et al., *The Law of Automobile Insurance in South Carolina* IV–37 (4th ed. 2000) ("The insurer is not required to make another offer of optional coverages pursuant to [section 38–77–350] at renewal time provided a properly completed and executed form has been previously obtained from the insured being renewed.").

■■ Because section 38–77–350(A) does not require an insurer to provide a UIM offer form to an insured who is renewing an existing policy, it is questionable whether the legislature intended for section 38–77–350(E) to apply in such a situation. *Cf. Howell v. U.S. Fid. & Guar. Ins. Co.,* 370 S.C. 505, 509–10, 636 S.E.2d 626, 628–29 (2006) (concluding that because liability coverage for hired and non-owned vehicles is not statutorily required, an insurer providing only that type of voluntary coverage need not comply with section 38–77–160's requirement to offer UIM coverage). While section 38–77–350(E) uses the general term "form," a basic rule of statutory construction is that "general words—and it makes no difference how general—will be confined to the subject treated of." *Henderson v. McMaster,* 104 S.C. 268, 272, 88 S.E. 645, 646 (1916); *see also Beattie v. Aiken County Dep't of Soc. Servs.,* 319 S.C. 449, 452, 462 S.E.2d 276, 278 (1995) ("An entire code

---

**3.** *See Antley v. Nobel Ins. Co.,* 350 S.C. 621, 635–36, 567 S.E.2d 872, 879–80 (Ct.App.2002) (holding an insurer could not rely upon section 38–77–350(C) to avoid the reformation of its insured's policy to include uninsured motorist coverage when the insurer failed to present any evidence that it previously made a meaningful offer of such coverage to the insured).

section should be read as a whole so that phraseology of an isolated section is not controlling."). Absent legislative intent to the contrary, a statutory term should not be given a more expansive construction in one subsection of the statute than in another subsection. *See Gustafson v. Alloyd Co.,* 513 U.S. 561, 572–73, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (rejecting the argument that the word "prospectus" had a broader meaning in one section of the Securities Act of 1933 than in another section). Thus, because section 38–77–350(A)'s use of the term "form" does not encompass non-required UIM offer forms given during the renewal process, it is unlikely that section 38–77–350(E)'s use of that term should include such forms.

### B. Subsections (B) and (D) of Section 38–77–350

■ Section 38–77–350(B) provides further support for the conclusion that Draine's policy should not be reformed to add UIM coverage. Pursuant to section 38–77–350(B), if an insured executes a properly completed offer form that complies with section 38–77–350(A), the insurer cannot be held liable under the policy for the insured's failure to purchase UIM coverage. S.C.Code Ann. § 38–77–350(B) (Supp.2009).

Here, the parties have stipulated that, in 2003, Draine properly rejected UIM coverage by executing an offer form that complied with all aspects of South Carolina law. While Draine did not execute the UIM offer form that he received when he renewed his coverage in 2005, section 38–77–350(B) expressly references the "form" described in section 38–77–350(A).[4] As noted above, section 38–77–350(A)'s use of the term "form" does not include non-required UIM offer forms given during the renewal process. Therefore, because GEICO properly offered, and Draine properly rejected, UIM coverage in 2003 when Draine was a "new applicant," section 38–77–350(B) appears to preclude us from holding GEICO liable

---

4. Section 38–77–350(B) begins by referring to *"this* form." *See* § 38–77–350(B) (emphasis added). By doing so, section 38–77–350(B) specifically references the use of the word "form" in section 38–77–350(A). *Cf. Alvarez,* 546 U.S. at 34, 126 S.Ct. 514 (explaining that the phrase "said principal activity or activities" in one subsection of a statute was an explicit reference to the use of the term "principal activity or activities" in the immediately preceding subsection of the statute).

under Draine's policy for Draine's failure to purchase UIM coverage.

Like section 38–77–350(B), section 38–77–350(D) also provides support for the conclusion that the legislature did not intend for an insurer to be held liable in a case like the one presented here. Under section 38–77–350(D), an insurer satisfies his duty to offer UIM coverage by complying with the relevant provisions of section 38–77–350, and the insurer cannot subsequently be held liable in an action for damages on account of the insured's rejection of UIM coverage. *See* S.C.Code Ann. § 38–77–350(D) (2002). Here, it is undisputed that GEICO properly complied with section 38–77–350 when it initially offered UIM coverage to Draine in 2003 and that he expressly rejected UIM coverage at that time. Although it is true that GEICO offered Draine optional coverage again when he renewed his policy in 2005, Draine made no indication that he wanted to purchase UIM coverage. Accordingly, based upon sections 38–77–350(B) and (D), we conclude that GEICO should not be held liable in any way for Draine's failure to purchase UIM coverage.

## C. Purpose and Design of Section 38–77–350

 We believe that our interpretation of section 38–77–350 is consistent with the purpose and design of the statute. The South Carolina Supreme Court has explained that "[t]he purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage 'is for insureds to know their options and to make *an informed decision* as to which amount of coverage will best suit their needs.'" *Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253, 262–263, 626 S.E.2d 6, 12 (2005) (quoting *Progressive Cas. Ins. Co. v. Leachman*, 362 S.C. 344, 352, 608 S.E.2d 569, 573 (2005)) (emphasis added). When an insured does not return a UIM offer form, the insurer cannot be certain that the insured actually made a decision regarding UIM coverage. Accordingly, the legislature has chosen to create a statutory presumption that the insured desires coverage in such cases. Here, however, Draine unquestionably made an informed decision rejecting UIM coverage in 2003. *See* § 38–77–350(B) (providing that if UIM coverage is offered and rejected in accordance with section 38–77–350, then it is "conclusively presumed" that an

"informed" choice was made). In view of that fact, it does not make sense to presume that Draine desired UIM coverage in 2005 merely because he failed to return the UIM offer form he received when he renewed his policy that year.

A somewhat similar conclusion was reached by this court in *United Services Automobile Ass'n v. Litchfield,* 356 S.C. 582, 590 S.E.2d 47 (Ct.App.2003). In that case, the court addressed whether it was appropriate to reform an insured's automobile insurance policy to include UIM coverage when the insured previously informed her insurer that she wanted to drop her UIM coverage. The insured contended the policy should be reformed because the insurer did not make a valid offer of UIM coverage when she purchased her policy. *Id.* at 584, 590 S.E.2d at 48. On appeal, this court, without addressing the validity of the insurer's offer, concluded the policy should not be reformed to include UIM coverage. The court explained that finding in favor of the insured "would make no sense" given that the insured had previously contacted the insurer "for the specific purpose of dropping [UIM] coverage." *Id.* at 584, 590 S.E.2d at 49.

Here, like in *Litchfield,* it would not make sense to hold that Draine's failure to return the 2005 UIM offer form dictated the addition of UIM coverage to Draine's policy given that (1) Draine had expressly rejected GEICO's legally compliant offer of UIM coverage just two years earlier and (2) the 2005 UIM offer form specifically advised current South Carolina policyholders like Draine that they were required to return the form "*only* if you want to make changes to your policy." (emphasis added). Taken together, these two facts lead to the inescapable conclusion that Draine made an informed decision to reject UIM coverage. Therefore, finding that Draine is not entitled to reformation of his policy does not offend section 38–77–350's purpose of protecting insureds from uninformed decisions regarding optional coverages.

## CONCLUSION

For the foregoing reasons, we hold that section 38–77–350(E) did not require GEICO to add UIM coverage to Draine's policy when Draine failed to return the UIM offer

form he received as part of GEICO's 2005 renewal materials.[5] Accordingly, the circuit court's decision is

**AFFIRMED.**

KONDUROS and LOCKEMY, JJ., concur.

---

5. Because Draine's remaining arguments are all premised upon a contrary construction of section 38-77-350(E), we decline to discuss those arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).